CHARLES UNKE v. HENRY DAHLMIER and Others.

December 12, 1899.

Nos. 11,898—(130).

## Stepfather as Guardian—Use of Wards' Estate—Support of Wards.

A widow married a second husband, and he with a child by his former marriage, and she and her minor children by her former marriage, all resided on her homestead as one family. He was appointed guardian of her children, and for 10 years thereafter cultivated the farm, consisting of said homestead and other land belonging to her and her children, and still other land conveyed to him, but purchased with the money of her children. He apparently treated the crops of all of this land as his own, never kept any separate account of the crops or profits of any part of it, but the crops were mingled together, and the family were supported out of the common mass. There was no evidence as to what arrangement he had with his wife as to the cultivation of her part of the land, and he never made any arrangement with her as to who should support her children, or what funds should be applied for that purpose. In a proceeding to settle the guardian's account, *held* he was the head of the family, and a finding that the wife's children boarded with her and that she supported them during the 10 years is not sustained by the evidence.

From an order of the probate court for Morrison county disallow-
ing in part the final account of Charles Unke, as guardian of Henry
Dahlmier and others, minors, the guardian appealed to the district
court of said county.   In the district court the appeal was tried
before Baxter, J., who found that the wards were entitled to recover
from the guardian the sum of $3,263.50; and from an order denying
a motion for a new trial, the guardian appealed.   Reversed.

*George W. Stewart* and *E. S. Smith*, for appellant.

*Lindbergh & Blanchard* and *E. P. Adams*, for respondents.

CANTY, J.

An appeal was taken from an order of the probate court settling
the account of Unke, as guardian of the five Dahlmier children.   On
the trial in the district court, judgment was ordered against Unke
in the sum of $3,263.50, and he appeals from an order denying a new
trial.

In 1886, Henry Dahlmier died intestate, leaving his widow and
four children surviving him.   His fifth child was born shortly after
his death.   He left 160 acres of land, 80 acres of which was his
homestead, so that his wife had a life estate in this 80 and an un-
divided one-third of the other 80.   In June, 1887, the widow married
the appellant, Unke, and thereafter he resided with her on her said
homestead.   Her five children resided with them, as also did a child
of his own by a former marriage.   On January 1, 1888, he was ap-
pointed guardian of her five children, and, as such guardian, re-
ceived at that time promissory notes payable to the deceased
amounting to $1,250, the same having come to the children as a part
of their share of their father's estate.   Some time afterwards, but
just when does not appear, Unke collected the notes, and used the
money to buy another 80 acres of land, the title to which he took
in his own name.   He cultivated this 80, and the Dahlmier 160,
thereafter, until January 1, 1898, when he resigned or was removed
as such guardian.

When he was appointed guardian, the oldest of the Dahlmier chil-
dren was 10 years of age.   They resided in the family during all of
the time of said guardianship, except that in December, 1893, when
the oldest boy was 16 years of age, he left the family home, and

78 M.—21

thereafter resided elsewhere. The district court ordered a judgment against Unke for the $1,250, and interest thereon at the rate of seven per cent. since he was appointed guardian. The court found that during all of the ten years of said guardianship he received a profit of $80 per year from the cultivation of said undivided two-thirds of said 80 acres which the five wards inherited from their father, and ordered judgment against Unke for those amounts also. He was allowed $25 for attorney's fees and some taxes that he had paid for the wards, but he was allowed nothing for the support, maintenance, or clothing of the wards, although he presented a claim therefor, and the main question which it is necessary to consider is whether the court erred in refusing to allow him anything therefor. The court found that during all of the 10 years of the guardianship the five wards "continued to live with her [their mother], as a part of her family, and to be supported by her," and for this reason the court refused to allow appellant anything for the support, maintenance, or clothing of the five wards.

In our opinion, the evidence does not sustain the finding above quoted. The evidence is that appellant, his child, his five stepchildren, and his wife all lived together as one family; that he cultivated the Dahlmier 160 acres and said other 80 acres; apparently treated all of the crops raised on all of this land as his own; never kept any account of the amount produced or the amount of the profit realized from any particular part of the land; and supported and maintained the family out of the produce of all of the land, regardless of whether it came from one part of the land or another. While the evidence on these points is very meager, it is uncontradicted, and, in our opinion, will not support the finding made. As his son and his stepsons grew old enough to do so, they assisted him in the cultivation of all the different parts of the farm. The evidence is wholly silent as to what arrangement or agreement he had with his wife under which he cultivated her share of the land, and there was no express agreement between them as to whose means should be used to support her five children.

On this evidence, it must be held that appellant was the head of the family. A widow, on her marriage to a second husband, is not

liable for the support of her minor child, but is entitled to have its income applied thereto (In re Besondy, 32 Minn. 385, 20 N. W. 366), and, whether the evidence would sustain a finding that the five wards were supported by funds and produce furnished partly by the mother and partly by the stepfather, we will not consider; no such finding is made. In Hazlett v. Babcock, 64 Minn. 254, 66 N. W. 971, the husband raised crops on his wife's land, and we held that, on the evidence in that case, it was a question for the jury whether the crops belonged to the husband or the wife. Conceding, without deciding, that the evidence in this case warranted a finding that all of the crops raised on the wife's land belonged to her, still it cannot be held on the evidence that the five wards were supported and maintained wholly from these crops, as all of the crops on all of the land were mingled together, and the family was supported from the common mass.

Again, conceding that the evidence would warrant a finding that appellant was in loco parentis to these five wards, that he received them into his family under circumstances such as to raise a presumption that he intended to support them gratuitously (see In re Besondy, supra), still there is no finding to that effect, and the evidence is certainly not conclusive that he intended to support them gratuitously. As the evidence will not support the finding above quoted, a new trial must be granted. In our opinion, it sufficiently appears by the settled case that it contains all the evidence.

Order reversed, and a new trial granted.