WORTHAM v. JOHN *et al.*

No. 897, Ind. T. Opinion Filed November 13, 1908.

(98 Pac. 347.)

1.　GUARDIAN AND WARD—Appointment of Curator—Setting Aside. A curator appointed, by order of the probate court in what was Indian Territory, for infant minors, pursuant to Mansf. Dig. sec. 3477 (Ind. T. St. 1899, sec. 2373), if made without voluntary appearance or due notice issued by said court to the mother of such minors, the father being dead, said appointment is void, and such order may be set aside by said court on petition of the mother.

2.　SAME—Invalid Appointment—Settlement. When such appointment is, for that reason, set aside by the court making it, said court is without jurisdiction to settle the accounts of such

curator, and its orders requiring him to make final report and settlement are void.

(Syllabus by the Court.)

*Error to the United States Court for the Southern District of the Indian Territory at Ardmore; Hosea Townsend, Judge.*

Application of Robert John and others for the removal of C. D. Wortham, curator. From an order granting the application, defendant brings error. Reversed, with direction.

On April 7, 1905, C. D. Wortham, curator, plaintiff in error, defendant below, filed his petition in the United States Court for the Indian Territory, Southern District, at Ardmore, and was on the same day duly appointed curator of the estates of Robert, Emerson, and Gertie (Mary) John, alleged in said petition to be residents of said district, and minors under the age of 21 years, whose father was dead and whose mother remarried. Their property was alleged to consist of their allotments of land in said district of the value of $1,000 each. On May 13, 1905, said Wortham, as curator, filed in said court his petition, alleging, in substance, that said minors were of Indian blood, and that their estate consisted of certain lands (describing them) located in the Chickasaw Nation, Ind. T., and within the jurisdiction of the court, in all of 490 acres; and prayed leave of court to make a lease thereof for five years to Eddleman and Graham, commencing January 1, 1905, and ending December 31, 1909, which was, after reference to the master, granted, and said lease, there shown to the court, was on June 19, 1905, by formal order duly approved.

On January 19, 1906, Sissie Moore filed in said court her petition alleging, in substance, herself to be the mother of said minors; that said Robert John was over the age of 21 years at the time said Wortham was appointed curator of his estate; that the same was done without his knowledge or consent; that said Emerson John was over the age of 14 years at the time, and never at any time selected or recommended to the court the appoint-

ment of said Wortham as curator of his estate; that the same was done without his knowledge or consent; that said Mary John was a minor under the age of 14 years; that petitioner at no time waived her right to be appointed guardian of any of her children, nor recommended to the court the appointment of said Wortham as curator of the estate of said Mary John; that petitioner was never cited to appear before the court to show cause why a guardian should not be appointed for her children, and in fact knew nothing of the appointment of said Wortham as curator aforesaid until several months after the same had been made and approved by the court; that said lease was fraudulent for certain reasons stated, and prayed that the same be set aside and held for naught, and that the appointment of said Wortham as curator be set aside and revoked, and for general relief.

On May 20, 1906, separate petitions of Robert and Emerson John were filed, asking for the removal of said Wortham as curator of their estates, alleging that they were over the age of 14 years at the time said curator was appointed, and that said appointment was made without their knowledge and consent, and at no time had they, or either of them, recommended the same or acquiesced in his said appointment.

At the same time said Wortham appeared in response to a rule of the court to show cause why he should not be removed as curator of the estates of said Robert, Emerson, and Mary John, and demurred to the complaint of Sissie Moore for misjoinder of parties and causes of action, which was overruled, and the cause referred to a special commissioner for full investigation of all the matter complained of, and to report his "finding upon the law and fact pertaining to said appointment and also of said lease." On April 17, 1906, before the testimony of witnesses was taken, which said testimony is not preserved in the record, said curator filed a motion to strike that part of the petition of Sissie Moore which seeks a cancellation of the lease and a money judgment

against said curator, and also filed an additional demurrer to her complaint, which were by the court overruled.

After finding the facts substantially as stated, except as to the age of Robert John, whom he found to be a minor over the age of 14 years, the commissioner further found that the petition of the curator was unsupported, at the time of his appointment, by any waiver or written request from the mother as the natural guardian and next of kin of either of said minors. On July 1, 1907, said report, together with the exceptions thereto filed by the curator, came on to be heard, at which time said report was sustained by the court "in so far as findings of fact and recommendations of law touching the appointment of C. D. Wortham as curator are concerned,".but "in.so far as the findings of fact and recommendations of law in reference to the lease made to A. Eddleman and J. C. Graham are concerned, the same was disapproved, and the relief prayed for denied," and it was ordered by the court that the letters of guardianship theretofore issued to said C. D. Wortham, curator of the estates of Robert, Emerson, and Mary John, be and the same were thereby revoked and annulled, and said Wortham removed from said trust office as curator of said estates. To all of which, except as to said lease, said curator then and there excepted, and prosecuted his appeal to the United States Court of appeals in the Indian Territory, and the same is now before us for review as successor of that court.

*Cottingham & Bledsoe,* for plaintiff in error.

*I. R. Mason, T. L. Wright,* and *Cabell & Bass,* for defendants in error.

Turner, J. (after stating the facts as above. It is contended that the court erred in making the order on July 1, 1907, revoking and annulling the letters of curatorship issued to C. D. Wortham, on April 7, 1906, and removing him as curator of the estates of Robert, Emerson, and Mary John. We do not think so. The order appointing said Wortham as such, in the first instance, is indefensible. The undisputed facts are that at the time said

appointment was made Robert and Emerson John were minors over the age of 14 years, and Mary John a minor under the age of 14, that their mother was then living, and that said letters were issued to Wortham on his petition without notice. to any of them. Assailing this order, it is contended that the jurisdiction of the court to make it depended on notice to the mother. With this contention we agree. The jurisdiction of the probate court is founded on statutes which should be strictly construed. Shouler's Domestic Relations (4th Ed.) 499, 450, § 303, says:

"The court of chancery exercises a large discretion. Its authority over the persons and estates of infants, idiots, and lunatics cannot be questioned elsewhere. No tribunal short of the Legislature can interpose a check upon its powers. But it is different with probate courts. Their jurisdiction is founded upon local statutes, maintained in derogation of the common law, made subject to supervision of supreme tribunals, and confined to the exercise of special powers sparingly conferred. * * * With special strictness are the powers of probate tribunals scrutinized in matters which do not grow out of the settlement of estates of deceased persons."

At the time this appointment was made Mansf. Dig. provided (section 3477 [Ind. T. Ann. St. 1899, § 2373]):

"When a minor shall be entitled to or possessed of any estate not derived from the parent who shall be the natural guardian at the time, and it shall be suggested to the court that such parent is incompetent to the care of such estate, or is mismanaging or wasting the same, the court may issue a notice to such person to appear before it at a stated time, and show cause why a curator shall not be appointed or chosen; and, if on due notice no sufficient cause be shown, the court shall appoint a curator for the management of such estate for the minor, if under fourteen years of age, or, if over that age, admit the minor to choose one in the same manner and subject to the same restrictions as provided for the choice or appointment of guardians for minors over that age."

The notice thus required to be issued by the court was not merely directory, but a condition precedent to the vesting of jurisdiction in the court to make the appointment unless the parent appear voluntarily, and as no notice was given, and the mother

did not voluntarily appear, the order appointing Wortham was void. Mr. Woerner in his work (American Law of Guardianship), on page 95, says:

"That no guardian can be appointed to the person of an infant having father or mother living, not declared unsuitable by a court of competent jurisdiction, nor a guardian or curator to an infant whose father or mother is entitled, under the law, to take charge of its estate as natural guardian, has already been pointed out as the law in most states. But parents may be adjudged incompetent or unfit to have the custody, care, and education of their children in proceedings for that purpose by a court having jurisdiction, in which proceeding the parents must be made parties, by notice to them enabling them to appear and he heard, unless they appear voluntarily. It is a fraud on the rights of a father to obtain guardianship of his child without his knowledge; and the appointment of a guardian to an illigitimate child, or to a legitimate child, after its father's death without notice to the mother is void"—citing *Sensemann's Appeal,* 21 Pa. 331,; *Bowles v. Dixon,* 32 Ark. 92; *Bryan v. Lyon,* 104 Ind. 227, 3 N. E. 880, 54 Am. Rep. 30.

See, also, *Spears and Wife v. Snell,* 74 N. C. 210; *In re Jacquet,* 40 Misc. Rep. 575, 82 N. Y. Supp. 986; *Dalton v. State,* 6 Blackf. (Ind.) 357.

In *Bowles v. Dixon, supra,* there was a petition for a writ of *habeas corpus,* filed by the father to secure the custody of his two minor children from respondent, who had been appointed their guardian by the probate court of Chicot county, Ark., without notice to him, addressed to the judge of the Eleventh judicial district, sitting in chancery. On appeal the judgment of the lower court granting relief was affirmed by the Supreme Court, which, in substance, held that petitioner was not bound by the proceedings of the probate court making the appointment to which he was not a party, and that its judgment was not conclusive against him. We are therefore of the opinion that, before the court could make the order complained of, which, in effect, took from the mother, as the natural guardian, the estate of these two minors, and placed it in the hands of a stranger, it should have issued notice to the

mother and given her a day in court to show cause why the same should not be done, and that, the court having improperly made the order in the first instance appointing said Wortham as curator, it very properly set the same aside on petition of the mother and the facts showing that the same was made without notice to her as required by law. The order thus made, being void, was properly assailable by petition after the expiration of the term at which it was made.

This was so expressly held in *Redman and Wife. v. Chance, Guardian,* 32 Md. 42. In that case appellants filed their petition in the orphans' court of Talbot county and prayed that the appointment of the appellee as guardian for the infant child of Mary H. Redman, one of the appellants, be revoked, on the ground that it was made without notice to the mother, as required by law. The petition was filed after the term had expired at which the appointment was made. The court dismissed the petition, refusing to send the issue of notice to a court of law for trial, from which order petitioners appealed. Appellee insisted that his appointment, being the act of a court of competent jurisdiction, cannot be impeached by a proceeding by petition, but that the remedy of appellant was by appeal directly from the order of the court making the appointment. The only power conferred on the orphans' court to appoint guardians for infants, if the father or mother was living, was derived from a section of the Code of that state as follows:

♦ "The orphans' court shall have the right and power to appoint a guardian to any such infant as aforesaid, although such infant may have a father or mother living at the time of the appointment; provided, notice by the court be given by publication or otherwise, to such father, or mother (if there be no father living), to show cause why such an appointment should not be made."

The Supreme Court reversed the order of the lower court, and in passing, speaking of that provision of the Code, said:

"In thus recognizing the common-law right of the parent to the guardianship of the child, the Legislature was careful to guard against the appointment of any other person, except upon notice

to the father or mother, if living, and a strict compliance with this provision of the statute was therefore made a condition precedent to the exercise of the power conferred."

Speaking of the event of a failure to give notice, the court further said: "We are clearly of opinion, therefore, that in such a case the father or mother, if living, may, by petition or other proceeding, in the same court, attack the order itself. This general principle has been repeatedly recognized in courts of law and equity, where parties have been allowed, by an independent proceeding, to impeach judgments and decrees rendered without notice"—and sent the case back to the lower court to determine the fact whether the mother was not served with notice as alleged in the petition.

The order being thus seen to be void, and not merely voidable, it is unnecessary to consider the further contention of plaintiff in error that, being voidable, it could not be set aside after the expiration of the term of court at which it was made. A void judgment or order may be set aside at any time. Nor can we review the action of the court refusing to cancel the lease complained of, for the reason that plaintiff in error did not appeal therefrom and no cross-appeal has been prosecuted from that part of the order by defendant in error. Neither is it necessary to discuss an alleged waiver of notice by the mother, in an alleged conversation with Wortham before his appointment, for the reason that the testimony not being preserved, and the master's report being silent on this point, we cannot consider it. Besides, as held by the court in the Redman Case, *supra,* the judgments of the probate court in this and other matters will not be permitted to rest in parol. The notice mentioned in section 3477 means legal notice issued by the court, and which seems to contemplate notice in the nature of a summons which cannot be dispensed with unless, as stated, by voluntary appearance in the person required to be notified.

As a further assignment of error it is urged by plaintiff in error that:

"This record shows that a month after the rendition of the judgment declaring the appointment of C. D. Wortham void for want of jurisdiction, and adjudging that all of his acts were void and without authority of law, the court, without any notice whatever to the said Wortham or his counsel, made two orders, the first requiring Wortham to make a final report in this cause, showing all moneys, rents, and revenues which had come into his possession, and to file such report within 15 days from the date of said order (July 31, 1907), and to pay over to the clerk of the court all such moneys, rents and revenues which had or should have come into his hands."

The other order complained of was that the court on the same day made an order approving and ordering the curator to pay the account of Margaret Lawson for $31 for services rendered as stenographer, the account of Alex Folsom for $5 for services as interpreter, and that, after having made such payments, the amount found due Robert John and Emerson John as shown by the final report be paid to them, and the amount found due Mary John be paid to G. W. Thompson, as curator of her estate, appointed as such by the court since its revocation of the letters of said Wortham. We are clearly of the opinion that the court was without jurisdiction to make these orders to proceed to a settlement of the accounts of Wortham as curator *de son tort,* for such he was, after the order appointing him had been set aside. The original appointment, having been made by the court with no power to make it, was no appointment at all. All acts done by the curator under the appointment thus made must be treated precisely as if done by a stranger. 1 Am. Law of Administration, 616.

In *Dunham v. Hatcher,* 31 Ala. 483, Hatcher and Lodor were appointed by the probate court of Dallas county administrators *de bonis non* of one Dunham deceased, and by virtue of said appointment undertook to act as testamentary guardians of the two infant children of the deceased, without giving bond as guardians. They made several partial settlements with said court, both as administrators and guardians, and later made final settlement of

their administrations and guardianship, which seemed to have been partially consolidated. On that settlement Blackwell, who had married the decedent's widow, and who had been appointed guardian *ad litem* of such infant children, reserved exceptions to certain rulings of the court, in allowance of credits and commissions to said Hatcher and Lodor, both as administrators and as guardians. Two separate decrees were rendered against them, one in their character as guardians, which recited that they had paid into court the amount found due from them as such, accepted their resignation, and declared the guardianship closed. Their accounts as administrators were also closed, and their resignation as such accepted. The appeal was sued out by said infants by their guardian *ad litem,* and assigned the orders as error. The Supreme Court in declaring the order settling the guardianship void said:

"From the bill of exceptions, as well as from other parts of the record, it appears that Robert L. Hatcher and John A. Lodor regarded themselves as the testamentary guardians of Texana Dunham and Willie P. Dunham, simply because they were the administrators *de bonis non cum testamento annexo* of William P. Dunham, deceased, and that for the same reason, and no other, the probate court of Dallas county treated the said Hatcher and Lodor as such guardians. The bill of exceptions clearly shows that said Hatcher and Lodor never gave bond as such guardians, but acted in that capacity *'merely by their appointment as administrators of said William P. Dunham.'*

"The *mere appointment* of two persons as administrators *de bonis non cum testamento annexo* of a deceased father cannot, in any case in this state, authorize them to act as testamentary guardians of his minor children, nor give to the probate court making such appointment jurisdiction, by final decree or otherwise, to treat them as testamentary guardians, or to settle their accounts as such guardians. That court is one of special and limited jurisdiction, as to the settlement of the accounts of persons acting as guardians. In other words, it has no jurisdiction to settle the accounts of guardians appointed by some other probate court, nor of persons whose pretensions or claims to the character or capacity of guardians for certain minor children rest upon the sole ground that they have been appointed administrators *de bonis non*

*cum testamento annexo* of the deceased father of those children. As the probate court is, in this respect, a court of special and limited jurisdiction, consent cannot give it jurisdiction, where the record not only fails to show everything necessary to confer jurisdiction, but actually shows the nonexistence of one or more of the jurisdictional facts. Upon the case as presented by the bill of exceptions now before us we decide that Hatcher and Lodor were not the testamentary guardians of Texana and Willie P. Dunham, that the probate court of Dallas county had no jurisdiction to settle their accounts as such guardians, and that the decree of that court, which purports to fully close and finally settle their guardianship and accounts as guardians, is void, and must be reversed. *Taliaferro v. Bassett,* 3 Ala. 670; Clay's Dig. 221, § 3; Id. 269, §§ 10-13; Code 1852, §§ 2015-2018; *Eslava v. Lepetre,* 21 Ala. 504, 56 Am. Dec. 266."

If relief by an accounting is to be had at all, it is not by this proceeding, but by proper proceeding in a court of equity. *Bailey et al. v. Bailey et al.,* 67 Vt. 494, 32 Atl. 470, 48 Am. St. Rep. 826, was an appeal from the order of the chancellor dismissing the bill upon demurrer. The bill recited, in substance, that orators were the sons of Joseph Bailey, deceased, by his first wife. The defendants were his widow and his sons by her. That the estate of the said Joseph Bailey was in process of settlement. That the widow was the administratrix. That, among other things, deceased had been insane for many years prior to his death, during which time defendants had managed and disposed of his property as their own and the object of the bill was to compel, among other things, the defendants to account for whatever they had received from his property—the income and profits of his real and personal estate. In support of the demurrer it was contended that orators had an ample remedy at law, and that the matters in controversy could be adjudicated in the probate court, but the Supreme Court in passing held defendants to be trustees by construction, and in overruling the demurrer said:

"Among such instances, it has been held that persons may become trustees by intermeddling with and assuming the management of property, without authority. They are held to be trus-

tees *de son tort,* in the same manner that persons who deal with a deceased person's estate without authority are executors *de son tort.* Holding the defendants accountable as trustees is but the application of the familiar principle that, if a person, by mistake or otherwise, assumes the character of trustee, guardian, executor, or administrator and acts as such when the office does not belong to him, he thereby becomes such official *de son tort,* and can be called to account, by the beneficiaries, for the assets received under color of the trust. If a man intrudes upon the estate of an infant, and takes the profits thereof, he will be treated as a guardian and held responsible therefor to the infant in a suit in equity" —citing 2 Fonbl. Eq. bk. 2, pt. 2, c. 2, § 1, and note "f"; *Bennett v. Whitehead,* 2 P. Wms. 644; *Morgan v. Morgan,* 1 Atk. 489; *Dormer v. Fortesque,* 3 Atk. 124; *Goodhue v. Barnwell,* Rice's Eq. (S. C.) 198; *Drury v. Conner,* 1 Har. & G. (Md.) 220; *Chaney v. Smallwood,* 1 Gill (Md.) 367.

"We think the powers of the probate court are not adequate to the settlement of such controversy as is shown by the bill. It has no power to cite before it any persons who have been acting as trustees by construction or officials *de son tort* and to settle their accounts. It settles the accounts of such officials as are appointed by the court itself, and not the controversies that arise when one has intermeddled with the estate of an infant, insane person, or a trust."

We are therefore of the opinion that the order of July 1, 1907, revoking and annulling the letters of guardianship issued to Wortham was valid and must stand, but that the orders complained of, made and entered July 31, 1907, requiring him to make final report and to pay over all moneys, rents, and revenues which have come into his hands belonging to the estate of said minors to the clerk of the court, and (on the same day) requiring him to pay the account of Margaret Lawson for $31 for services as stenographer, and the account of Alex Folsom for services as interpreter, and that, after making such payments, the amount found due Robert John and Emerson John as shown by the final report be paid to them, and the amount found due Mary John be paid to G. W. Thompson, as guardian of her estate, appointed such by

the court since its revocation of the letters of said Wortham, are void and should be set aside.

It is therefore ordered that this cause be reversed, with directions to the lower court so to do, and that the costs of this appeal be taxed to said Wortham.

All the Justices concur.