COUNTY OF STEARNS v. TOWNSHIP OF FAIR HAVEN.[1]

May 20, 1938.

No. 31,659.

[1]Reported in 279 N. W. 707.

*Theodore F. Neils,* for appellant.

*Harry E. Burns,* County Attorney, and *E. J. Ruegemer,* Assistant County Attorney, for respondent.

*William S. Ervin,* Attorney General, and *Roy C. Frank,* Assistant Attorney General, for the State.

PETERSON, JUSTICE.

This action is to determine the settlement of an alleged pauper and to recover for its support, claimed to have been paid and advanced by plaintiff on behalf of defendant. The alleged pauper is the illegitimate child of an unmarried mother, born on September 11, 1932, in defendant township, where the mother resided. Paternity of the child was never established because the father absconded.

On January 21, 1933, the probate court committed the child to an orphanage at St. Cloud as a dependent child. On September 17, 1935, the court made an order declaring the child a dependent, unsuitable for adoption, and committed it to the care of the state board of control as a child in need of specialized care. On May 18, 1936, on petition caused to be filed by the state board of control, the probate court adjudged the child feeble-minded and committed it to the custody of the state board of control.

First it is urged that the child was a charge of the state for whose support the state alone is responsible. The basis of the contention is that the child was committed to the state board of control first as one needing specialized care and then as a feeble-

minded person. It is claimed that the duty of care and support was imposed upon the state board of control in consequence of the commitments and guardianship resulting under the statutes. The commitment of September 17, 1935, as a dependent child needing specialized care was under 2 Mason Minn. St. 1927, §§ 8689-1 to 8689-5 (as amended by 3 Mason Minn. St. 1936 Supp. § 8689-1). This statute supplements the statute relating to the state public school for dependent children, 1 Mason Minn. St. 1927, §§ 4618-4627, the purpose of which is to make children committed to the school self-supporting and suitable for adoption. Some children are not suitable for such purposes but can be made so by specialized care and training. The specialized care statute authorizes specialized care and training for such children, to make them self-supporting and suitable for adoption. The language of the statute is [§ 8689-1]:

"Whenever a juvenile court shall find a child to be dependent or neglected and it appears that such child is not at the time a proper subject for commitment to the state school for the feeble-minded, but is so handicapped physically or mentally that he cannot be admitted to the state public school or be placed in a home for adoption, the court may commit such child to the care of the state board of control as a child needing specialized care in order that he may receive study, treatment, and care designed to fit him, if possible, to be placed out for adoption or to become self-supporting."

A child so committed shall be placed "in a suitable family home" so that he shall have the advantages of normal home life and enjoy in an approved family home the personal care and training which ought to be given by his parents. 2 Mason Minn. St. 1927, § 8689-2. From September 17, 1935, when the child was committed for specialized care, to May 18, 1936, when it was committed as feeble-minded, it lived in a private home in St. Cloud where it was placed by the state board of control, which paid for its care and support during that period.

If a person is found to be feeble-minded it is the duty of the court to appoint the state board of control guardian of his person and commit him to its care and custody. 3 Mason Minn. St. 1936 Supp.

§ 8992-176. The child was not admitted to the school for feeble-minded by the board of control because the school was filled to its capacity, and the board did not have facilities or means for taking care of it. The board had a long waiting list of others to be received pursuant to prior commitments.

The state, as *parens patriae* of its unfortunate and helpless citizens, assumes in some instances responsibility for their care and protection. State ex rel. Olson v. Brown, 50 Minn. 353, 52 N. W. 935, 16 L. R. A. 691, 36 A. S. R. 651; State ex rel. Berry v. Merrill, 83 Minn. 252, 86 N. W. 89. Such responsibility can be assumed by the state only by statute. It is for the legislature to determine, and it has determined, in what cases the state shall assume the responsibility of care and protection, the nature and extent of such responsibility, and the means by which it shall be discharged. The statutes governing the state board of control and institutions subject to its jurisdiction and supervision authorize state care and support of only those of its wards who are institutionalized. The single exception called to our attention is that of children needing specialized care in private homes. Appropriations of public funds are made upon that basis. As indicative of an intention not to assume responsibility for care of those not committed to state institutions, L. 1937, c. 435, § 23, authorizing the commitment of inebriates and the insane to private licensed institutions, provides that such patients are required to pay the charges of such institutions. The legislature has expressed an intention to authorize support and care only in cases where the patient is in a state institution, except where it has expressly otherwise provided. It has clearly indicated an intention not to pay for the same where the patient is not in such an institution. If the state is responsible in this case, it results from the commitments for specialized care and feeble-mindedness or the statutory guardianships resulting from such commitments.

The commitments do not have that effect. No statute provides that commitment imposes any duty of care or support. Nor is there anything about a commitment which in itself imposes such a re-

sponsibility. The commitment is simply a warrant of authority to the state board of control to receive the person committed and deal with him in the manner provided by law. The statute, not the commitment, prescribes the duties of the state board of control. In the case of the child committed for specialized care, the statute authorizes the state board of control to pay for its support and care in a private home and makes provisions for apportioning the expense between the state and the county from which the child was committed. 2 Mason Minn. St. 1927, § 8689-5. The statute authorizes the state board of control not to support feeble-minded persons, but to admit them to a state institution. No other duty is prescribed. This is plain when 3 Mason Minn. St. 1936 Supp. § 8992-176, providing that the court shall, if it finds the patient feeble-minded, appoint the state board of control guardian of his person and commit him to its custody, is read in connection with *Id.* laws, § 4500, which provides:

"All feeble-minded persons, resident of the state, duly committed to the guardianship of the state board of control who, in the opinion of said board, are in need of care and training at some state institution for the feeble-minded may be admitted to such an institution * * *"

Even the duty to admit the patient to a state institution pursuant to a commitment is discretionary. The evident reason is that the board must act with regard to its accommodations and means[2] as well as the needs of the patient. All who are committed cannot be admitted, nor is it desirable that they should be under all circum-

[2]Other statutes recognize the necessity of qualifying commitments by ability to admit to state institutions those committed. 1 Mason Minn. St. 1927, § 4473, provides that boys committed to the state training school shall be received so far as accommodations and means permit. Section 4478 contains a similar provision relating to the admission of girls to the Minnesota Home School for Girls. Section 4539 provides that no inebriate shall be committed unless room is available. Section 4619 provides that dependent and neglected children shall be received into the state public school upon commitment as capacity permits. On the other hand, the state board of control may determine only to what hospital an insane person shall be committed.

stances. If it were so, the purpose of the institution might be defeated by overcrowding, resulting in part from the admission of those who are not fit subjects, and thus make training less effective, if not impossible.

The state board of control was constituted the guardian of the person of the child by statute when it was committed as a child needing specialized care, under 1 Mason Minn. St. 1927, § 4454, and when it was committed as a feeble-minded person under 3 Mason Minn. St. 1936 Supp. § 8992-176. Guardianship does not impose a duty to pay for care and support. The state board of control is constituted guardian of the person only, not of the estate. Whether a guardian of the person only has any duties of care or support it is not necessary now to decide. See 3 Mason Minn. St. 1936 Supp. § 8992-135. A guardian, other than a parent or natural guardian, is under no obligation to support his ward out of his own means. His duty in this respect is only to pay for the ward's support out of the ward's estate. 2 Mason Minn. St. 1927, § 8939; *Id.* 1936 Supp. § 8992-135; 28 C. J. p. 1113, § 182; *Id.* p. 1116, § 187. By virtue of guardianship alone, the state board of control would owe no other duty to its wards than a guardian owes to a ward without an estate. In the ordinary guardianship, that would end the matter as far as care and support are concerned. The guardianships assumed by the state are different in that the state provides the means of care and support out of public money appropriated for the purpose. Public money is made available that the duties of care and protection may be undertaken and discharged by the state board of control as guardian. But the legislature has determined by law how the care and protection shall be provided. In the case of the guardianship during the commitment for specialized care, the responsibility for care and support was by statute upon the board of control, which discharged its responsibility by paying for the child's keep during that period. This guardianship and the duty of care and support were terminated by the adjudication that the child was feeble-minded under § 8689-2, which provides in part: "Provided, that if the board of control is satisfied that the child

is feeble-minded it may bring him before the probate court of the county of his residence for examination and commitment." In the case of a feeble-minded person there is no statutory authority for care for and support corresponding to that of children committed for specialized care. The state board of control is authorized to care and support the feeble-minded only in state institutions. The guardianship is assumed by the state upon the terms and conditions prescribed by law. Since the duties of the state board of control are governed by the applicable statutes, responsibility for care and support results not from the guardianship, but from the statute. There is no responsibility to support a feeble-minded person merely because of his commitment as such or guardianship resulting from such commitment.

The duty to care for and support a feeble-minded person begins when he is admitted to an institution. Since the child was not so admitted, it was not a charge of the state.

■ The statutes determine responsibility for care and support. They provide that every poor person shall be supported by his relatives named in the statute, in the order in which they are named; that, if the relatives refuse or fail to support him, he shall receive relief from the county, township, city, or village in which he has a settlement; and that a minor, unemancipated and not settled in his own right, shall have the same settlement as the parent with whom he last lived. 1 Mason Minn. St. 1927, §§ 3157 to 3161, as amended by 3 Mason Minn. St. 1936 Supp. §§ 3159-3 and 3161. Such statutes apply to the insane and feeble-minded as well as to other persons. 48 C. J. p. 454, § 50; *Id.* p. 484, § 118; note, 20 Ann. Cas. 764. The mother of an illegitimate minor is responsible for its support. State v. Nestaval, 72 Minn. 415, 75 N. W. 725; 1 Dunnell, Minn. Dig. (2 ed.) § 825; 7 Am. Jur. p. 674, § 71. If she refuses or fails to support it, the county, town, city, or village of its settlement is responsible. Hendrickson v. Town of Queen, 149 Minn. 79, 182 N. W. 952; note, 20 Ann. Cas. 762. The result is that where a dependent, illegitimate, feeble-minded child is committed, but not admitted, to the school for feeble-minded, the mother, and if she

18

neglect or refuse to pay, the county, town, city, or village of its settlement, is responsible for its support.

The claim is also made that the child's settlement in defendant township was not established. It appears without dispute that the mother was a resident of defendant township at the time of the child's birth on September 11, 1932, and that the child was born there. This is admitted in the pleadings, and no claim to the contrary was made during the trial. There is no evidence to show that the mother of the child changed her residence. It thus appears that at the time the child was committed as a feeble-minded person its mother had been a resident of defendant township from at least September, 1932, to May, 1936. This was sufficient to establish a pauper settlement. A minor, not emancipated and settled in his own right, has the same settlement as the parent with whom he last resided. 1 Mason Minn. St. 1927, § 3161 (amended *Id.* 1936 Supp. § 3161). Therefore, the child has the same settlement as its mother. Hendrickson v. Town of Queen, *supra;* see 7 Am. Jur. 675, § 72. A settlement is lost only by acquiring another one elsewhere. In re Leslie, 166 Minn. 180, 207 N. W. 323. The child's settlement was not lost by reason of its presence in St. Cloud, where it received care, treatment, and observation as one needing specialized care. Nor did the child acquire a settlement of its own under the provision of Ex. Sess. L. 1935-1936, c. 68 (3 Mason Minn. St. 1936 Supp. § 3161), which became effective on January 24, 1936, which reads:

"Provided, that every minor not emancipated and settled in his own right and living apart from his parents * * * shall, after receiving aid and support from others uninterruptedly for a period of two years, acquire the settlement of the person with whom he has resided for a period of not less than two years."

The statute is not retroactive. The child received specialized care in St. Cloud less than four months after the statute became effective. This was not sufficient under the statute to give it a settlement there.

Affirmed.