IN RE ADOPTION OF MARTHA ANN PRATT
(ALSO KNOWN AS GALE).
JAMES RUBERT GALE v. NORMAN H. LEE
AND ANOTHER.[1]

March 23, 1945.

No. 33,918.

[1]Reported in 18 N. W. (2d) 147.

*Field & Field* and *Leonard Eriksson,* for appellant.
*Philip R. Monson,* for respondents.

PETERSON, JUSTICE.

This is an appeal from an order denying a motion by the step-father of Martha Ann Pratt, also known as Martha Ann Gale, to vacate a judgment for her adoption by Norman H. Lee and his wife, Rose C. Lee.

Although appellant has resided and worked in Minnesota since 1941, his domicile is in Tennessee. The respondents are domiciled residents of Fergus Falls, Otter Tail county, Minnesota.

The adopted child is a little girl, who at the time of the rendition of the judgment was a little less than five years old. She was born out of wedlock on March 17, 1939, in Shelbyville, Bedford county, Tennessee, where her mother, Ella Mae Pratt, was a domiciled resident. On March 15, 1941, appellant married the child's mother. They maintained their home in Shelbyville, where the child lived with them. The mother died in August 1941, when the child was two years and five months old. Appellant promised the mother on her deathbed that he would provide and care for the child and rear her as his own. No guardian for her had been appointed in Tennessee.

That appellant endeavored to keep the deathbed promise to his wife to care and provide for the child is clear. Within two months after his wife's death he set out in search of work as a farm laborer, taking the child with him. They passed through the states of Indiana and Illinois, where appellant worked for a short time. Then they made their way to the home of appellant's brother, Rolla Gale, in Fergus Falls, where they arrived about October 15, 1941. That the child had been neglected en route is also clear. She was unkempt, dirty, and infested with lice. Being unable to provide the child with a home, appellant placed her with his brother and his wife, who took care of her in their home, except for some short periods which she spent with others, until the judgment of adoption was rendered about two years later. During this two-year period, the child spent about two months with appellant on a farm nearby where he worked, about three months with the adoptive parents, and about one month with appellant's sister, Erma D. Jones, and her husband. During all this time appellant was employed in or near Fergus Falls but did not maintain a home of his own. Appellant's brother and his wife lived next door but one to the adoptive parents. Besides staying with the Lees for the three-month period mentioned, the adopted child visited them almost daily while she stayed with appellant's brother and his wife. Respondents came to love the child and wished to adopt her. Appellant's sister, Erma D. Jones, spoke to him several times prior to the institution of the

adoption proceedings concerning respondents' desire to adopt the child.

At the time the adoption proceedings were instituted, Mr. Lee was employed in connection with defense work at Hastings, Nebraska, where he and his wife took up a temporary residence. They returned to Fergus Falls temporarily to adopt the child. Their attorney evidently had prepared all the papers relative to the guardianship and the adoption proceedings, to be presently mentioned, so as to be able to complete both proceedings on the same day. Appellant was then working at the state hospital at Fergus Falls. On December 30, 1943, Mr. Lee and appellant's brother, Rolla, called for him at the hospital and told him that he was wanted at court, and thereupon the three of them went to the courthouse. First, they went to the probate court, where appellant's sister, Erma D. Jones, upon her own petition, was appointed guardian of the person and property of the child. Apparently it was stated to the probate judge that her appointment as guardian was satisfactory to everybody concerned. While the petition for the appointment of the guardian has not been returned to us, the order recites that the child was a "resident" of Fergus Falls in Otter Tail county, Minnesota. Appellant signed as a witness to the sureties on the guardian's bond..

After the guardianship proceedings had been completed, the persons mentioned went to the district courtroom, where a petition by Mr. and Mrs. Lee for the adoption of the child was presented to the district court of Otter Tail county. The guardian executed a written consent to the adoption, which was filed with the petition. Thereupon the district court proceeded with the hearing. It waived an investigation by the director of social welfare and the six-months period of residence of the child with the adoptive parents in their home as required by statute, upon the ground that such investigation was not necessary under the circumstances of the case. In the district court, appellant testified in substance that, because he did not have a home of his own in which to keep the child, he could not object to the adoption; and, that while he would prefer,

if able to do so, to keep the child himself, the home of the adoptive parents was a good one. The fitness of the adoptive parents and their home is unquestioned. There can be no doubt that appellant has a deep and sincere affection for the child, but, notwithstanding that fact, is an unfit person to have her custody, and that there is little hope, if any, for any improvement in his situation. On January 3, 1944, the district court rendered judgment that the child be the adopted child of Norman H. and Rose C. Lee and that her name be changed to Martha Ann Lee.

Thereafter, and within the time to appeal, appellant moved the probate court to vacate the order appointing the guardian and the letters of guardianship. The motion was granted. An appeal to the district court, which remains undecided, has been taken from that order.

While the motion was pending in the probate court, appellant also made a motion in the district court within the time to appeal to vacate the judgment of adoption, but this motion was dismissed before hearing. Immediately thereafter, on March 6, 1944, the county court of Bedford county, Tennessee, granted appellant's petition for the adoption of the child and decreed that the child be the adopted child of appellant and that her name be changed to Martha Ann Gale. After appellant had procured the Tennessee decree of adoption and after the probate court had vacated the order appointing the guardian and the letters of guardianship, he made another motion to vacate the Minnesota judgment of adoption. At the same time, appellant moved the court for an order directing and adjudging that the adoptive parents forthwith surrender and deliver the possession of the child to appellant. The appeal is from the order denying the motions.

In this court, as he did below, appellant contends that (1) The judgment of adoption is void because the adoption proceedings upon their face show that the basic prerequisites for an adoption under Minn. St. 1941, §§ 259.01 to 259.05 (Mason St. 1927, §§ 8624 to 8628, as amended by L. 1941, c. 151), are lacking, in that no notice of the adoption proceedings was given to the director of

social welfare; there was no investigation and report by that official; the adopted child had not resided in the home of the adoptive parents for a period of six months prior to the hearing; and there was no consent by any person or agency authorized to give it; (2) the consent to the adoption given by the child's guardian was without any legal effect, because subsequently the order appointing the guardian and the letters of guardianship were vacated and annulled; (3) the trial court failed to give recognition to the Tennessee decree of adoption, where it is claimed the adopted child had her domicile when both the Tennessee decree and the Minnesota judgment were rendered; and (4) appellant has been denied his "day in court."

■ It is true that no notice of the adoption proceedings was given to the director of social welfare; that there was no investigation report by that official; and that the adopted child had not resided in the home of the adoptive parents for a period of six months prior to the hearing, as required by § 259.02 (§ 8625) ; but the statute, in the following language, explicitly provides that the trial court may waive these requirements: "Such investigation and period of residence may be waived by the court upon good cause shown, when satisfied that the proposed home and the child are suited to each other." The court found that the proposed home and the child were suited to each other. The evidence amply sustains the court's finding.

■ Section 259.03 (§ 8626) provides in effect that no adoption of a minor shall be permitted without the consent of the parents, but that such consent may be dispensed with and "consent may be given by the guardian, if there be one." Here, it appears that there was in fact both a guardian and a consent to the adoption given by the guardian. The order appointing the guardian recited that the child was a "resident" of the county and was in all respects regular and valid upon its face. The guardian gave the consent, and all concerned relied thereon in good faith. Appellant's argument in effect is that both the appointment of the guardian and the consent given were without legal effect, because subse-

quently both were vacated and annulled and hence that there was no consent at all. If the consent was valid, it satisfied the requirements of the statute. The vacation and annulment of the order appointing the guardian and the letters of guardianship did not render them void *ab initio* with the consequence that the guardian's consent to the adoption was void. The vacation or revocation of letters, orders, and decrees by the probate court does not render them an utter nullity and void *ab initio,* but ineffective only from the time of the vacation or revocation. In Connecticut Mut. L. Ins. Co. v. Schurmeier, 125 Minn. 368, 147 N. W. 246, we held that vacation by the probate court of an order granting leave to an executor to bring an action after he had commenced it pursuant to such leave did not relate back so as to nullify the executor's leave to bring the action in the first instance or his right to prosecute it to final judgment afterward. As to persons in good faith relying thereon, acts done by a representative in the course of administration remain valid and binding, notwithstanding a subsequent vacation or revocation of his letters, if the court had jurisdiction of the subject matter. Fridley v. Farmers & M. Sav. Bank, 136 Minn. 333, 162 N. W. 454, L. R. A. 1917E, 544. See, State ex rel. C. B. & Q. R. Co. v. Probate Court, 149 Minn. 464, 184 N. W. 43. While the cited cases involved letters of administration, the decision in the Fridley case, where there is a full and elaborate discussion of the principles involved, shows that the rule stated applies to letters of guardianship also, citing Menage v. Jones, 40 Minn. 254, 41 N. W. 972, involving a sale of real estate by a foreign guardian under statutory authorization by the probate court. Of course, if the probate court had no jurisdiction of the subject matter, the order and letters in question and the consent to the adoption given by the guardian thereunder were absolutely void and without any legal force or effect. The cases cited by appellant (In re Guardianship of Van Loan, 142 Cal. 423, 76 P. 37, and Wortham v. John, 22 Okl. 562, 98 P. 347) were decided upon that theory. The question, then, is: Did the probate court have jurisdiction of the subject matter?

■ In considering the question whether the probate court had jurisdiction to appoint a guardian of the child, we start out with the proposition that the child's residence was in Minnesota and her domicile in Tennessee. Her residence was in Minnesota, because she had been physically present in Otter Tail county for over two years when the petition for the appointment of a guardian was filed. Her domicile was Tennessee, because, being an illegitimate child, she took the domicile of her mother, Thayer v. Thayer, 187 N. C. 573, 122 S. E. 307; (see, County of Stearns v. Township of Fair Haven, 203 Minn. 11, 279 N. W. 707) ; and, because appellant, being her stepfather, was a stranger to her, State ex rel. Sheedy v. District Court, 66 Mont. 427, 213 P. 802; In re Remske, 95 Misc. 330, 160 N. Y. S. 715 (stepfather of wife's illegitimate child) and, being such, could not change her domicile. McDowell v. Gould, 166 Ga. 670, 144 S. E. 206. Of course, a stepparent may assume the parental relation toward the other spouse's children for purposes of care and support during the continuance of the family relationship. State ex rel. Williams v. Juvenile Court, 163 Minn. 312, 204 N. W. 21; In re Besondy, 32 Minn. 385, 20 N. W. 366, 50 Am. R. 579; Eiken v. Eiken, 79 Minn. 360, 82 N. W. 667; Unke v. Dahlmier, 78 Minn. 320, 80 N. W. 1130. But this is not such a case. No claim is made that the child by her own act changed her domicile. Because of her tender age, she clearly lacked the capacity to choose a domicile of her own. State ex rel. Carlson v. Hedberg, 192 Minn. 193, 256 N. W. 91.

We decided the precise question here involved against appellant's contention in In re Guardianship of Campbell, 216 Minn. 113, 11 N. W. (2d) 786, where we held that the probate court has jurisdiction to appoint a guardian for a child actually residing here and having its domicile in another state. We there construed the word "resident" in Minn. St. 1941, § 525.54 (Mason St. 1940 Supp. § 8992-129), authorizing the appointment of a guardian of a "resident" of the county, to mean one who resides there in the "sense of residence merely and not in the sense of domicile." Regardless of our decision in that case, appellant contends that the state of

a child's domicile has exclusive power to appoint a guardian and that other states do not possess such power.

The jurisdiction of the state extends to all persons within its territorial limits, regardless of the place of their domicile. From earliest times, infants and other persons lacking the physical and mental capacity to protect themselves or their property have been accorded special protection. Formerly, this protective function was regarded as a prerogative of the crown and was exercised by the king as *parens patriae* or the parent, in a peculiar sense, of orphaned and dependent children and other unfortunates, or by the chancellor by delegation as the king's personal representative. The state possesses this protective power as an attribute of sovereignty and exercises it in the manner provided by statute. The state exercises jurisdiction over the helpless and unfortunate for the purpose of protecting both the public and those who are mentally incapable of caring for themselves from the acts of the latter. The duty has its foundation in the reciprocal obligations of allegiance and protection and extends to all persons within the state, including aliens and strangers, who, while they are present here, are under obligations of temporary, local allegiance and are entitled to the state's protection. County of Stearns v. Township of Fair Haven, 203 Minn. 11, 279 N. W. 707; State ex rel. Olson v. Brown, 50 Minn. 353, 52 N. W. 935, 16 L. R. A. 691, 36 A. S. R. 651; New York L. Ins. Co. v. Bangs, 103 U. S. 435, 26 L. ed. 580; Bliss v. Bliss, 133 Md. 61, 104 A. 467; In the Matter of Colah, 3 Daly (N. Y.) 529; 27 Am. Jur., Infants, §§ 101 to 105. Since the duty of protection extends to all unfortunate and helpless persons, the necessity for exercising the state's protective power depends upon the presence of such persons within its territorial limits, and not upon the place of their domicile or their ownership of property within the state. As said in Bliss v. Bliss, 133 Md. 73, 104 A. 471, *supra:* "It is their presence within the limits of the State that necessitates the exercise of the power to protect their persons and the community in which they may be placed, * * *." Where the state assumes the protective relationship, it may delegate the per-

formance of that function in the manner provided by law. State ex rel. Olson v. Brown, *supra*. The function is commonly discharged by providing for the appointment of guardians for infants and insane persons. It logically follows, therefore, that the state has jurisdiction to authorize the appointment of a guardian for an infant residing within the state whose domicile is elsewhere. People ex rel. Noonan v. Wingate, 376 Ill. 244, 33 N. E. (2d) 467; Louisville & N. R. Co. v. Kimbrough, 115 Ky. 512, 74 S. W. 229; Martin v. Gardner, 240 Mass. 350, 134 N. E. 380; Woodworth v. Spring, 4 Allen (86 Mass.) 321; Finlay v. Finlay, 240 N. Y. 429, 148 N. E. 624, 40 A. L. R. 937; 27 Am. Jur., Infants, § 105, note 8. The plain fact is that the need for a guardian of the person may be as great at the place of his actual residence as at the place of his domicile. Kelsey v. Green, 69 Conn. 291, 37 A. 679, 38 L. R. A. 471; Jones v. Bowman, 13 Wyo. 79, 77 P. 439, 67 L. R. A. 860; Johnstone v. Beattie, 10 Clark & F. 42, 8 Reprint 657; 25 Am. Jur., Guardian and Ward, § 25, note 7.

The child's status and domicile resulting from operation of the law of Tennessee, where her mother was domiciled, could have recognition here only under well-settled principles of conflict of laws in such cases. Youmans v. Youmans, 218 Minn. 172, 15 N. W. (2d) 537. The laws of one state of their own vigor have no extraterritorial effect. The laws of foreign states and rights and obligations arising thereunder must yield when they conflict with the statutes of the forum. Green v. Van Buskirk, 5 Wall. 307, 18 L. ed. 599. See, Kyle v. Kyle, 210 Minn. 204, 297 N. W. 744. The policy of our statute, as announced in In re Guardianship of Campbell, 216 Minn. 113, 11 N. W. (2d) 786, *supra*, is to afford protection to children residing here even though their domicile may be in another state. The statute authorizing the appointment of guardians in such cases prescribes our own policy, regardless of any status or domicile created under the laws of other states.

In some cases, the broad statement is made that a guardian of the person of an infant may be appointed *only* at the place of the child's domicile. See, State ex rel. Carlson v. Hedberg, 192 Minn.

193, 256 N. W. 91, *supra;* 39 C. J. S., Guardian and Ward, § 10, note 99. That is an expression of the well-settled rule that ordinarily the appointment of a guardian should be made at the infant's domicile. The rule cannot be followed to the extent that a state may not exercise jurisdiction to appoint a guardian for a resident child whose domicile is in another state where the welfare of the child requires such action. Our decision in the Campbell case, *supra,* settles the rule here to the contrary in accord with well-considered decisions elsewhere.

Our conclusion is that the probate court had jurisdiction to appoint a guardian of the child. Protection of the child in its utterly helpless and neglected condition was but a common duty of humanity. It would be a strange reflection upon the power of the state if it could not be asserted to protect those who through no fault of their own happened to be in the unfortunate circumstances of this child.

Assuming that appellant, as the custodian of the child, was entitled to notice of the hearing on the petition for the appointment of the guardian, he is in no position to complain that no such notice was served upon him, because he had actual notice of the proceedings and voluntarily participated therein. For that reason, if not for others (see, In re Estates of Gilroy, 193 Minn. 349, 258 N. W. 584), he has no ground for complaint. Where the custodian of a child appears and voluntarily participates in the proceeding for the appointment of a guardian, he cannot complain of lack of proper notice. Smith v. Biscailuz, 83 Cal. 344, 21 P. 15, 23 P. 314; Erickson v. McCullough, 91 Utah 159, 63 P. (2d) 595, 109 A. L. R. 332. The rule is also applied in cases involving the appointment of a personal representative of a decedent. In re Brooks' Estate, 110 Mich. 8, 67 N. W. 975; Spencer v. Wolfe, 49 Neb. 8, 67 N. W. 858; 33 C. J. S., Executors and Administrators, § 53, note 46.

Aside from any question concerning the child's domicile, the district court had jurisdiction to render the judgment of adoption. The child's presence in the state in its unfortunate and helpless con-

dition afforded sufficient basis for the exercise of jurisdiction over her for purposes of adoption. Because of the child's inability to care for herself, the state had the power to assume parental authority over her and to delegate her care and custody to such agents as it might choose. State ex rel. Olson v. Brown, 50 Minn. 353, 52 N. W. 935, 36 A. S. R. 651, 16 L. R. A. 691, *supra*. By authorizing the adoption of a child, the state in effect delegates the functions of its care and support to the adoptive parents. It is true that the child was incapable of consenting to either the adoption or a change of domicile, but the state as *parens patriae* could do that for her. As said in the similar case of Stearns v. Allen, 183 Mass. 404, 408, 67 N. E. 349, 351, 97 A. S. R. 441, 444:

"Adoption involves a change of status. So far as the adopting parents are concerned, the change cannot be made without their consent. So far as an infant child is concerned, the State, as his protector, may make the change for him."

■ While appellant complains that the trial court refused to recognize the Tennessee decree of adoption, he does not claim that it was entitled to full faith and credit under the constitution and laws of the United States. But that aside, the Tennessee decree was not entitled to recognition, upon the ground, if not for other reasons, that plainly the Tennessee court was without jurisdiction to render it, because at the time of its rendition (1) the child's domicile was in Minnesota, and (2) the child was not physically present in Tennessee, but was with the adoptive parents either in Minnesota or in Nebraska, where the adoptive father was employed. The child's domicile should be held to have been in Minnesota in virtue of either the guardianship or the adoption.

The power of a general guardian over the person of his ward is much the same as that of a parent. The guardian may change the domicile of his ward from one state to another, subject, however, to the control and supervision of the court. Townsend v. Kendall, 4 Minn. 315 (412), 77 Am. D. 534; Fox v. Hicks, 81 Minn. 197, 83 N. W. 538, 50 L. R. A. 663. The guardian is substituted

for the ward, as said in Anderson v. Estate of Anderson, 42 Vt. 350, 353, 1 Am. R. 334, "with reference to all his interests, to act for him in the management of his property and to fix the locality of his person and determine his domicil." There is no valid reason why the domicile of an infant should not be changed in a proper case. A person *sui juris* may change his domicile at will. Any restraint upon the exercise of choice of domicile is regarded as an abridgement of one's rights. Hennen v. Hennen, 6 La. 494 (12 La. O. S. 190). The right to change one's domicile may be exercised even for the purpose of changing one's status to a person at the old domicile, as in cases of divorce, where one spouse goes to another state to establish a domicile for the purpose of obtaining a divorce. Williams v. North Carolina, 317 U. S. 287, 63 S. Ct. 207, 87 L. ed. 279, 143 A. S. R. 1273. The domicile of a person *sui non juris* may be changed for him where there is good reason for the change. Here, there was no advantage in retaining the Tennessee domicile. The child, because of her tender age, had no voice in establishing that domicile, which flowed by operation of law from her status. When her mother died, the status ceased, but the domicile resulting from the status continued. She had become a waif. She was incapable of acquiring a new domicile by her own acts, because she lacked mental capacity to choose one. There was good reason for changing the child's domicile to Minnesota. The guardianship and the adoption were instituted for the avowed purpose of giving the child a permanent *status* as the adoptive parents' child and a permanent home here with them. This was a benefit to the child. See, Goodrich, Conflict of Laws (2 ed.) p. 382. The intention to give the child a permanent home here, coupled with the fact of her actual residence here, established her domicile here. The fact that the guardian had been such for but a small fraction of a day is not controlling in determining whether the child's domicile was changed. Domicile is established instanter when both residence in fact and intent to make it a permanent place of abode concur. Nolker v. Nolker (Mo.) 257 S. W. 798; Finley v. Finley (Mo. App.) 6 S. W. (2d) 1006; Dailey v. Town of Ludlow, 102 Vt.

312, 147 A. 771; White v. Tennant, 31 W. Va. 790, 8 S. E. 596, 13 A. S. R. 896; 28 C. J. S., Domicile, § 10, note 77. There was such a concurrence of residence and intent here.

An adopted child acquires by operation of law the domicile of the adoptive parents. In re Guardianship of Johnson, 87 Iowa 130, 54 N. W. 69; Woodward v. Woodward, 87 Tenn. 644, 11 S. W. 892.

The change of status and domicile effected by the guardianship and adoption, unlike the change of status resulting from a divorce obtained at a new domicile acquired for that purpose, did not affect the child's status to any person at her old domicile in Tennessee.

A decree of adoption is void for lack of jurisdiction where, as here, the adopted child is not physically present in the state and has its domicile elsewhere. 1 Am. Jur., Adoption of Children, §§ 14 and 32. See, Youmans v. Youmans, 218 Minn. 172, 15 N. W. (2d) 537, *supra.*

■ Of course, one who is entitled to the custody of a child, especially the natural parents, should not be deprived of that right except for grave and weighty reasons. Assuming that appellant had a right to the custody of the child because of the fact that he was her custodian in fact, he has had his "day in court." As we have said, it appears that prior to the institution of any of the proceedings in question appellant's sister, Mrs. Jones, discussed the matter with him. The proceedings in the probate court show that the probate judge appointed the guardian upon the assumption that such action was agreeable to appellant as well as to others present. Appellant, as has been said, signed the guardian's bond as a witness. The district judge carefully and fully explained to appellant the nature and effect of the adoption proceedings. The conclusion is inescapable that appellant did not object, because he realized that he had no grounds for objecting.

In conclusion, we hold that the probate court had jurisdiction to appoint the guardian; that the guardian's consent to the adoption is valid as against the subsequent vacation and annulment of the order appointing the guardian and the letters of guardianship;

428

that the district court had jurisdiction to render the judgment of adoption; that, because the child's domicile was changed to Minnesota by the guardianship and the adoption, and because the child was not physically present in Tennessee when the court of that state rendered the decree of adoption, the Tennessee decree is void for lack of jurisdiction; and that appellant has had his "day in court." We think that appellant could render the child and her natural mother's memory no finer service than by letting the matter rest and permitting the child and the adoptive parents to make the adjustments incident to the adoption without further interference or litigation.

Affirmed.