STATE EX REL. ALICE CARLSON AND ANOTHER v. JOHN W. HEDBERG AND ANOTHER.
STATE EX REL. ALICE CARLSON AND ANOTHER v. OSCAR E. HEDBERG AND ANOTHER.[1]

June 29, 1934.

Nos. 29,664, 29,665.

[1]Reported in 256 N. W. 91.

194

■■■■■■■■

■■■■■■■■

■■■■■■■■

■■■■■■■■

*G. H. Snyder* and *Marshall S. Snyder,* for John W., Violet, Oscar E., and Clara Hedberg, appellants (respondents below).

*Walter T. Ryan* and *W. G. Haddow,* for Alice Carlson and Ethel Nelson, respondents (relators below).

*JULIUS J. OLSON, Justice.*

*Habeas corpus* (two cases tried together in the court below and similarly submitted here) to determine the custody of Lucille Carlson, born April 3, 1924, and her brother Donald Carlson, born September 9, 1925.

Both children are orphans. Their mother died May 18, 1931, and their father January 4, 1932. Both parents were residents of and domiciled within the state of Wisconsin and died while there so domiciled. In addition to the two children mentioned above, they also left surviving them a son Lewverne and a daughter Leona, both younger than the two whose custody is here involved.

On January 12, 1932, Judge W. C. Richardson of the county court of Pepin county, Wisconsin, duly appointed relators, Alice Carlson and Ethel Nelson, general guardians of the persons and estates of all of said minors. These women are the paternal aunts of these children. In the letters of guardianship they were given "the care, custody and education" of all of said children, including "the care

and management of their estate until they shall have arrived at the age of twenty-one years." There is no other guardian of either person or estate of any of the children, but petitions are pending in this state by John W. Hedberg and his wife and Oscar E. Hedberg and his wife to have themselves appointed guardians here of Lucille and Donald. They have also petitioned to adopt these children as their own. That matter too is pending and undetermined.

In August, 1931, Vern F. Carlson, the father of these children, being ill and out of work, his wife having died, left with Oscar E. Hedberg and Clara Hedberg, his wife, the girl Lucille. He told them that he was not feeling a bit well, had neither money nor a job,' and that he was afraid they would have to keep Lucille a long time. The Hedbergs promised they would gladly do so.

In February, 1932, John W. Hedberg and Violet Hedberg, his wife, obtained the custody of the boy Donald, who was at that time living with a Mrs. Johnson, his aunt, at Superior, Wisconsin. The children have been with the Hedbergs ever since except for a visit of about seven weeks during the summer of 1932, when they were with their Wisconsin relatives. When the guardians asked for the custody of the two children the Hedbergs refused. Since then various petitions and other proceedings have been brought into play having for their object the solution of the problem of the custody. As we view the situation, however, no further comment need be made in respect thereof.

On May 23, 1933, the district court of Hennepin county (the Honorable Lars O. Rue, Judge presiding) made an order, upon application of the guardians, directing the Hedbergs to return the custody of the children Lucille and Donald to them. An appeal was taken to this court from that order on June 16, 1933. On July 18, 1933, this court issued an order appointing District Judge Winfield W. Bardwell of Minneapolis as referee to take the testimony in these cases and to certify the same to this court.

Pursuant thereto Judge Bardwell heard the evidence on October 10, 11, and 12, 1933. The testimony taken was later transcribed and transmitted to this court on February 16, 1934. Counsel have pro-

vided us with elaborate briefs, and we have also had the benefit of exhaustive oral arguments.

The record is in typewritten form, as also are the briefs of counsel. The whole matter is rather voluminous, the record containing 285 pages of typewritten matter and a number of typewritten exhibits. But counsel have very diligently assisted us in our review by appropriate indexes and quotations. These with the briefs submitted have been found very helpful.

There are three questions discussed by counsel as follows: (1) Whether this court has jurisdiction to award the custody of these children to the Hedbergs; (2) whether there is anything in this record justifying this court, assuming that it has jurisdiction, to disregard or make for naught the appointment of relators as guardians of the persons and estates of these children in the state of Wisconsin; and (3) assuming this court has jurisdiction, whether the evidence is such as to justify this court in holding that it is for the best interests of these children that their custody be awarded to the Hedbergs.

■ The question of jurisdiction is always, when involved, of vital and determinative importance. The proceeding here partakes of the nature of an action *in rem*, the *res* being the child's status or his legal relationship to another. We are not dealing with substantive property rights but rather and only with the question of the domicil of these children. After all, domicil is determinative of whether or not we have jurisdiction to proceed. Restatement, Conflict of Laws, c. 2, § 10, defines domicil as follows:

"Domicil is the place with which a person has a settled connection for legal purposes; either because his home is there or because it is assigned to him by the law."

There can be no quarrel with the accuracy of this definition. Nor can there be any doubt but that the parents of these children were domiciled in the state of Wisconsin at all times during their married life and up to the moment of death. They had no other domicil, home, or place of abode.

Section 37 of the same Restatement has this to say:

"Upon the death of the father, the domicil which a minor child has at the time of the father's death continues to be its domicil during minority, unless its domicil is changed according to the principles stated in sections 38, 39 and 40."

Section 38 relates to a change of a child's domicil by a person acting as the child's guardian. Section 39 is to the effect that "if the father dies and no guardian of the child's person is appointed, the child has the same domicil as that of its mother." Here that particular section is ineffective because the mother predeceased the father. Section 40 provides:

"If both parents of a minor child are dead and no guardian of the child's person is appointed, a grandparent who takes the child to his home to live becomes its natural guardian, and the domicil of the child is that of the grandparent so long as the child continues to live with him."

And this significant comment follows:

"No other relative than the mother or one of the grandparents can be a natural guardian of the child."

This section is not applicable for the reason that in the instant case it is conceded that respondents were duly appointed guardians of the persons and estates of these children only a few days after their father's death.

The record here clearly establishes that these children were at all times domiciled in the state of Wisconsin. The remark made by the father, when he left Lucille with Mr. Hedberg and wife, to the effect that he was without money and had no job and that he was afraid that they would have to keep Lucille a long time, cannot possibly be construed into a relinquishment of his parental right of custody or duty to take care of his child and certainly in no way establishes a change of domicil. It amounted to a request for aid, for help in time of distress, not as a permanent change, but simply as a temporary arrangement. Undoubtedly it was his hope to keep the family together and to retain his home in the state where he was raised and where he had always lived. This is further mani-

fested by him in his statement to Alice Carlson, made a few days before his death, when he said, "Take care of them [the children] and keep them together." Nor can there be any claim that these minors or either of them were emancipated. Their youth does not permit any such notion, and the remarks quoted cannot possibly be so construed. This being so, what we said in State ex rel. Larson v. Larson, 190 Minn. 489, 491, 252 N. W. 329, 330, is applicable here:

"An unemancipated minor, being incapable of choosing his own domicil, generally has the same domicil as his father."

This is the prevailing rule. In re Guardianship of Prehoda, 194 Iowa, 308, 189 N. W. 719; In re Connor, 93 Neb. 118, 139 N. W. 834; Jenkins v. Clark, 71 Iowa, 552, 32 N. W. 504; Ex parte Petterson (D. C.) 166 F. 536.

From what has been stated, it is obvious that the domicil of these children at the time of the death of their respective parents was in the state of Wisconsin. That being so, it necessarily follows that the county court of Pepin county, Wisconsin, had jurisdiction to appoint their general guardians. It is settled law that the only state which has jurisdiction to appoint a guardian is the state wherein the child is domiciled. Goodrich, Conflict of Laws, pp. 438-439. Under the law of Wisconsin they were clothed with complete authority in respect of the care, custody, and education of their wards. The applicable statute, Wisconsin St. 1931, § 319.03, reads:

"The father and mother of the minor, if living together, and if living apart then either as the court may determine for the best interests of the minor, and in case of the death of either parent the survivor thereof, being themselves respectively competent to transact their own business and not otherwise unsuitable, shall be entitled to the custody of the person of the minor, and to the care of his education. If the minor has no father or mother living, or he or she or both be incompetent or unsuitable, the guardian appointed shall have the custody of the person as well as of the estate of the minor and the care of his education; but the court may in its discretion appoint separate guardians of the person and estate

of the minor. The guardian of the person shall have the custody of the person, and the care of his education, and the guardian of the estate shall have the care and management of his estate; and in all cases, until such minor shall arrive at the age of twenty-one years, or until the guardian shall be discharged according to law."

See Guardianship of Bagley, 203 Wis. 89, 233 N. W. 563.

Our own statute, 2 Mason Minn. St. 1927, § 8933, is to the same effect:

"The guardian of a minor shall have the custody of his ward and charge of his education, and the care and management of his estate, unless otherwise specified in his appointment."

As early as Townsend v. Kendall, 4 Minn. 315, 321 (412), 77 Am. D. 534, this court said:

"As a general rule the power of a guardian over the person of his ward, is the same as that of a father over the person of his child, during the existence of the relationship."

To the same effect see Dunnell, Minn. Pr. Law, § 1286.

The powers of a guardian are recognized in In re Adoption of Mair, 184 Minn. 29, 237 N. W. 596.

In addition to what has been stated, we have art. IV, § 1, of the federal constitution, which provides:

"Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state."

It would therefore seem beyond question that the county court of Wisconsin had plenary jurisdiction and authority to act as it did.

■ From what has been heretofore stated, the third point argued by counsel perhaps is of little or no importance. But it is not improper for us to refer to the fact that these guardians are hardworking, honest, upright, and capable women. The husband of Ethel Nelson is a progressive farmer in Wisconsin and has everything that goes to make a complete, adequate, and attractive farm home. The other guardian, Alice Carlson, appears to be a woman of capacity and genuine worth. While these people have not so much in the way of physical property as the Hedbergs, yet the fact

remains that if these children can be kept together on the old place and amongst old surroundings in Wisconsin the probabilities are that it will be better for all of them that such be done. In making these comments in respect of the guardians it is not improper also to remark that the Hedbergs are very fine people, and there is no doubt at all in our minds but that they would make excellent foster parents for these children. But they still have the chance and opportunity of rendering aid and assistance to these children even if they are not given their physical custody now. It would seem that all these people, being intensely interested in these children's future and welfare, should be able so to work in harmony as to bring about the very best solution for their future.

We think the trial court correctly disposed of these cases. The custody of the children should be awarded to relators, their guardians, and it is so ordered.

