IN RE GUARDIANSHIP OF MARLENE KOWALKE AND
WAYNE KOWALKE.
LOUISE W. KOWALKE AND OTHERS v. LUTHERAN
WELFARE SOCIETY OF MINNEAPOLIS.[1]

December 29, 1950.

No. 35,192.

---

[1]Reported in 46 N. W. (2d) 275.

 

*W. L. Hursh,* for appellants.

*C. J. Donnelly, Edman & Edman,* and *Guy E. McCune,* for respondent.

LORING, CHIEF JUSTICE.

On October 7, 1948, the probate court of Lyon county appointed the Lutheran Welfare Society of Minneapolis general guardian of two neglected children, and the same order denied a petition for guardianship presented by the children's relatives. An appeal was taken to the district court of Lyon county, and, after a trial *de novo* there, the order of the probate court was affirmed. Thereafter, the children's relatives moved for amended findings of fact and conclusions of law or a new trial. The district court denied these motions, and the children's relatives have appealed to this court.

In 1947, Mr. and Mrs. Herman Kowalke and their minor children, Marlene and Wayne, were living in Marshall, Lyon county, Minnesota. On September 13, 1947, the juvenile court of Lyon county, on petition of the executive secretary of the Lyon County Welfare Board, found that Marlene, aged eight, and Wayne, aged six, were being wilfully neglected by their parents; that they were left at home alone and unsupervised without sufficient food or clothing; that their home was in an uninhabitable condition; that their mother was often absent from home; and that their father was frequently drunk. On these findings, the court adjudged and ordered that the children were neglected and committed them to the supervision and temporary custody of the Lyon County Welfare Board until further order of the court. On September 26, 1947, the Lyon County Welfare Board placed the children with the Lutheran Welfare Society of Minneapolis in Hennepin county. The county board retained financial responsibility for the children. Between September 26, 1947, and June

12, 1948, the children were kept at a temporary boarding home and then at a children's receiving home at the expense of the Lyon County Welfare Board. On June 12, respondent, the Lutheran Welfare Society of Minneapolis, placed the children in the private home of Mr. and Mrs. Alfred Ask, who live on a farm in Martin county. Mr. and Mrs. Ask received the children with adoption in mind and did not ask for or receive compensation for the children.

The children's mother, Doris Kowalke, left Lyon county on May 1, 1948, and has not returned there since that date, nor has the father, Herman Kowalke, who left on July 4, 1948. September 8, 1948, three separate proceedings took place. The probate court of Lyon county appointed Margaret B. Stevens, executive secretary of the Lyon County Welfare Board, as an individual, special guardian of the neglected children. Respondent petitioned the probate court of Lyon county for general guardianship of the children. Margaret Stevens made an oral report to the juvenile court of Lyon county, stating that respondent had found a suitable home for the children, that the children were no longer neglected, that the Lyon County Welfare Board wished to be released of any and all supervision of the children, and that a special guardian had been appointed for them. On the basis of this report, the juvenile court dismissed the original petition alleging neglect of the children.

On September 27, 1948, two aunts and the grandmother of the children petitioned the probate court of Lyon county to appoint John N. Heen, an uncle of the children, guardian for them. Mrs. Doris Kowalke, mother of the children, concurred in the petition.

Both petitions for guardianship came on for hearing in the probate court of Lyon county on September 30, 1948. The probate court appointed respondent guardian of the two children and by the same order denied the petition for the appointment of Mr. Heen. Petitioners then appealed to the district court of Lyon county, and a trial was had there *de novo*. In the district court, appellants moved for an order for judgment reversing the order of the probate court

and directing the probate court to dismiss both petitions for guardianship. They also objected to the jurisdiction of the district court and moved for judgment on the pleadings. Appellants' objection and motions were based upon the contention that the courts of Lyon county have no jurisdiction to entertain guardianship proceedings relative to the Kowalke children. The district court denied appellants' motions, overruled their objection, and affirmed the order of the probate court. The case is here on appeal from the order of the district court denying appellant's motion for a new trial.

■ The principal issue in this case arises out of the fact that the guardianship appointment here in dispute was made by the probate court of Lyon county at a time when the children affected by the guardianship proceeding were living in Martin county. On these facts, appellants contend that the probate court of Lyon county was not the proper court to appoint a guardian over the Kowalke children. In support of this contention they cite M. S. A. 525.54, which reads in part as follows:

"The court may appoint [here the probate court] one or two persons suitable and competent to discharge the trust as guardians of the person or estate or of both of any person who is a minor, * * * *provided such person is a resident of the county* or being a non-resident of this state has property in the county." (Italics supplied.)

Appellants interpret the word "resident" in the above statute as requiring that a minor be physically present in a county before a guardian can be appointed over him, and hence claim that the decree of the Lyon county court granting guardianship over the Kowalke children was improper by reason of the fact that the children were then living in Martin county. Appellants contend that, since the Kowalke children were living in Martin county at the time the Lyon county probate court appointed respondent their guardian, the requirement that the children be residents of Lyon county was not met. Whether appellants are correct in this con-

tention depends in large part upon the meaning to be given the word "resident" in § 525.54. Unlike the word "domicile," the word "resident" has not gained a generally accepted meaning. It appears to us that the best rule for determining what the word "resident" means in a given statutory enactment is found in the case of Bechtel v. Bechtel, 101 Minn. 511, 514, 112 N. W. 883, 884, 12 L.R.A. (N.S.) 1100. The court there stated:

"* * * As employed in statutory enactments, its meaning, as interpreted by the courts [the meaning of the word 'resident'], varies as the legislative intent appears, and in harmony with the subject-matter, object, and purpose of the statute."

This rule has been followed in Minnesota[2] and prevails in many other jurisdictions.[3] The difficulty in most cases, as here, is in determining whether the word "residence" is to be regarded as synonymous with the word "domicile." As this court stated in State ex rel. Selover v. Probate Court, 130 Minn. 269, 271, 153 N. W. 520, 521:

"* * * An accurate legal distinction between residence and domicile is not always observed by legislatures. It may not be of importance in all statutes."

In § 525.54, the distinction is important, and this court has already held that the word "resident," as used therein, is not entirely synonymous with the word "domicile." In In re Guardianship of Campbell, 216 Minn. 113, 11 N. W. (2d) 786, this court was called upon to construe the word "resident" in § 525.54. In that case, the probate court of Hennepin county appointed a guardian over a minor who was living in Hennepin county but whose domicile was in the state of Washington. The order appointing the guardian

---

[2]State ex rel. Selover v. Probate Court, 130 Minn. 269, 153 N. W. 520.

[3]Russell v. Holland, 309 Mass. 187, 34 N. E. (2d) 668; In re Takahashi's Estate, 113 Mont. 490, 129 P. (2d) 217; Jones' Case, 341 Pa. 329, 19 A. (2d) 280; Phillips v. S. C. Tax Comm. 195 S. C. 472, 12 S. E. (2d) 13; In re Estate of Schultz, 316 Ill. App. 540, 45 N. E. (2d) 577; Kemp v. Kemp, 172 Misc. 738, 16 N. Y. S. (2d) 26; Restatement, Conflict of Laws, § 9, *comment e.*

was attacked on the ground that only the courts in the state of the child's domicile could appoint a guardian over her, and hence that the word "resident" in § 525.54 should be construed as being synonymous with the word "domicile." In discussing this contention, the court held that *residence* differs from *domicile* in that residence simply requires bodily presence as an inhabitant in a given place, while domicile requires bodily presence in that place and also an intention to make it one's domicile. The court then went on to hold that the statutory requirement that a minor be a resident of the county where the guardian is appointed does not require that the minor be domiciled in the county, but that actual physical presence in the county is sufficient to meet the requirement of residence. The question left open was whether a constructive domicile in the county, without actual physical presence there, is also sufficient to meet the requirement of being a "resident." In answering this question, it must be remembered that the word "residence" may be a broader term or a narrower term than the word "domicile."[4] As this court pointed out in the Campbell case, *supra,* the word "residence" is broader in the sense that no element of intention is present in the concept of residence as it is in the concept of domicile. What was not made clear in the Campbell case is that the word "residence" may have a narrower meaning than the word "domicile." Although bodily presence in a given place plus an intention to make that place one's domicile are necessary to establish a domicile,[5] still a domicile may be maintained at a place where one is not physically present.[6] Thus, the concept of *residence* is narrower in the sense that *domicile* may be actual or constructive; whereas residence may be limited to the place of actual physical presence. If our decision in the Campbell case were

[4]Rummel v. Peters, 314 Mass. 504, 51 N. E. (2d) 57; Beale, *Residence and Domicil*, 4 Iowa Law Bulletin 3; Restatement, Conflict of Laws, § 9, *comment e.*

[5]In re Application of Quale for Old Age Assistance, 213 Minn. 421, 7 N. W. (2d) 153; In re Adoption of Pratt, 219 Minn. 414, 18 N. W. (2d) 147.

[6]See authorities cited in footnote 4, *supra.*

interpreted to mean that the word "resident" in § 525.54 requires actual physical presence, then it has a narrower meaning than the word "domicile," and a constructive domicile in Lyon county would not meet the statutory requirement. We do not, however, consider our decision in the Campbell case as committing us to a definition of the word "resident" which would, in all cases, require actual physical presence to maintain a residence. Nor do we consider ourselves as being committed to the rule that in all cases actual physical presence in a county is sufficient to constitute a residence there. The true meaning of the word "resident" in § 525.54 can be formulated best by a rather detailed review of the Minnesota case law on this subject. The law that determines where guardianship proceedings shall be commenced has developed in this state by a process of discriminating qualification of a general rule. In the case of State ex rel. Carlson v. Hedberg, 192 Minn. 193, 198, 256 N. W. 91, 93, this court laid down a general rule which has since been qualified considerably. There the court said:

"* * * It is settled law that the only state which has jurisdiction to appoint a guardian is the state wherein the child is domiciled."

This holding was unfortunately worded and stated the general rule too broadly. Insofar as the court was referring only to the jurisdiction of the court to create the status of guardian and ward by appointing a general guardian, the rule stated was entirely in accord with Restatement, Conflict of Laws[7] and many decisions in other jurisdictions.[8] The rule was too broad only in the respect that it might be interpreted to preclude a state, other than that of the

[7]"The status of guardian and ward is created and terminated by the state of the domicil of the ward." Restatement, Conflict of Laws, § 149.

[8]Lamar v. Micou, 112 U. S. 452, 5 S. Ct. 221, 28 L. ed. 751; Jenkins v. Clark, 71 Iowa 552, 32 N. W. 504; In re Guardianship of Skinner, 230 Iowa 1016, 300 N. W. 1, 136 A. L. R. 907; McDowell v. Gould, 166 Ga. 670, 144 S. E. 206; Shorter v. Williams, 74 Ga. 539; Succession of Vennard, 44 La. Ann. 1076, 11 So. 705; People ex rel. Wagner v. Torrence, 94 Colo. 47, 27 P. (2d) 1038; Watt v. Allgood, 62 Miss. 38; Kinehart v. Howard, 90 Md. 1, 44 A. 1040; see, also, 2 Beale, Conflict of Laws, § 149.1; Goodrich, Conflict of Laws (3 ed.) § 198; 6 N. C. L. Rev. 475, 476.

child's domicile, from appointing a temporary guardian. Such an appointment, however, does not create the status of guardian and ward, but instead creates a relationship more in the nature of custodianship.[9] A close examination of the facts in the Carlson case and a careful reading of the court's opinion there will disclose that the broad language used cannot be read literally, but instead must be construed in the light of the facts in that case. In the Carlson case, a county court in Wisconsin had appointed a general guardian of the persons and estates of two children domiciled in Wisconsin. The children were brought to Minnesota and were left in Minnesota with Mr. and Mrs. Hedberg. The Hedbergs later petitioned for guardianship of the children. In a contest between the Hedbergs and the general guardians over the custody of the children, custody was awarded to the general guardians. The court based its decision entirely upon its holding that the court in Wisconsin, where the children domiciled, had jurisdiction to appoint a general guardian over the children and upon its determination that the welfare of the children did not require that a guardian be appointed for the children in Minnesota. The broad language of the holding in the Carlson case must also be read in the light of the court's holding in the case of State ex rel. Larson v. Larson, 190 Minn. 489, 252 N. W. 329, which was decided in January of the same year. In that case, the court announced the same general rule that was later stated in the Carlson case, but in the Larson case the court saved an exception from the general rule. In the latter case the court said (190 Minn. 491, 252 N. W. 330):

"* * * A proceeding to determine custody of a minor child partakes of the nature of an action *in rem,* the *res* being the child's status or his legal relationship to another. *Except where necessary as a police measure* (see Hartman v. Henry, 280 Mo. 478, 217 S. W. 987—neglected child), it would seem that the only court which has

---

[9]Restatement, Conflict of Laws, § 150, *comment a;* Goodrich, Conflict of Laws (3 ed.) § 198.

power to fix, to change, or to alter this status is the court of the state in which the minor child is domiciled." (Italics supplied.)

If the court's broad language in the Carlson case is interpreted in the light of the facts in that case and in the light of the court's earlier holding in the Larson case, the literally broad sweep of the court's language should be narrowed to a holding that only a state where children are domiciled may appoint a general guardian over them and that a temporary guardian will not be appointed by a state where the children are living unless the welfare of the children requires it. The holding, thus interpreted, does not conflict with our decisions in the cases of In re Guardianship of Campbell, 216 Minn. 113, 11 N. W. (2d) 786, and In re Adoption of Pratt, 219 Minn. 414, 18 N. W. (2d) 147. In the Campbell case, this court upheld a guardianship appointment made by a Minnesota probate court where the child involved was living in Minnesota but was domiciled in the state of Washington. In the Pratt case, we upheld a guardianship appointment under similar circumstances. The rule laid down in those two cases, although not spelled out as fully as it might have been, is also in accord with the rule in Restatement, Conflict of Laws, § 150, which is as follows:

"A temporary guardian can be appointed in any state in which a defective person or a child is found.
"*Comment:*

"*a. Distinction between temporary guardianship and status.* The appointment of a temporary guardian under the rule stated in this Section does not create a status, first, because the court has no jurisdiction over the status of the ward (see § 149), and secondly, because the relation is in its nature local and temporary. In so far as it affects the child, a temporary guardian is similar to a custodian appointed under § 148.

"*b.* A temporary guardian may be given within the state that appointed him all the rights and duties of a guardian appointed in the state of the child's domicile * * *."

It is quite clear that the committee which revised our probate code in 1935 had in mind, when they drafted § 525.54, the rules stated in Restatement, Conflict of Laws, §§ 149 and 150. In 20 Minn. L. Rev. 333, the Honorable Albin S. Pearson (now a district court judge but then a probate court judge and a member of the Probate Code Revision Committee) discussed the probate code in general and § 525.54 in particular. He said (20 Minn. L. Rev. 334) :

"Under sections 129 [M. S. A. 525.54] and 187 [§ 525.82], proceedings for the appointment of a guardian shall be had in the county of the ward's residence, or if he be a nonresident of this state, proceedings may be had in any county in which his property is situated. The status of guardian and ward is created and terminated by the state of the domicile of the ward in so far as guardianship of the person is concerned. A temporary guardian can be appointed in any state in which the ward is found, but such appointment does not create a status."

Although our holding in the Campbell case, that a Minnesota probate court could appoint a guardian for a child domiciled outside the state, impliedly qualified the literal language of the holding in the Carlson case, it was not until our decision in In re Adoption of Pratt, 219 Minn. 414, 18 N. W. (2d) 147, that the qualification was expressly stated. There, the court stated that, although the Carlson case had expressed the well-settled rule that ordinarily the appointment of a guardian should be made at the infant's domicile, an exception existed which allows the state to appoint a guardian for a child living in Minnesota but domiciled outside Minnesota where the welfare of the child requires such appointment. The court went on to explain the rationale of this exception. It said (219 Minn. 422, 18 N. W. [2d] 152) :

"The jurisdiction of the state extends to all persons within its territorial limits, regardless of the place of their domicile. From earliest times, infants and other persons lacking the physical and mental capacity to protect themselves or their property have been accorded special protection. * * * The state possesses this pro-

tective power as an attribute of sovereignty and exercises it in the manner provided by statute. * * * The duty has its foundation in the reciprocal obligations of allegiance and protection and extends to all persons within the state, including aliens and strangers, who, while they are present here, are under obligations of temporary, local allegiance and are entitled to the state's protection."

It is perfectly clear from the above authorities that the Carlson case correctly states the general rule that only the state where a minor is domiciled may appoint a general guardian, and that the Campbell and the Pratt cases state the well-recognized exception that a state may appoint a temporary guardian for any minor found within its borders where the welfare of the child requires it.

In retrospect, it should now be observed that the cases in this state which have dealt with the meaning of the word "resident" in § 525.54 have involved problems on the conflict of laws between states. In this field, the question of which state court may properly appoint a guardian in a given case is a purely jurisdictional one. In accordance with the authorities reviewed above, we have determined that § 525.54 gives the probate courts of this state jurisdiction to appoint a general guardian over any child domiciled within the state and that it also gives them jurisdiction to appoint a temporary guardian over any child living in the state whose welfare requires such appointment.

Since the present case involves children admittedly domiciled in Minnesota and the only question presented is one of determining the appropriate county in which to commence guardianship proceedings, the authorities thus far examined are not necessarily decisive on the problem before us. In such a case, we must construe the word "resident" in § 525.54 in accordance with the rule stated in Bechtel v. Bechtel, 101 Minn. 511, 112 N. W. 883, 12 L.R.A. (N.S.) 1100, and give it that meaning which will best effectuate the objects and purpose of the statute. It appears to us that this can be done best by harmonizing our interpretation of the word "resident," as applied between counties, as nearly as may be with our interpreta-

tion of the word as applied between this state and other states. From such an interpretation, it follows that where a child is domiciled within Minnesota the county where the child is domiciled is the proper county in which to commence guardianship proceedings, and the word "resident" in § 525.54 must be construed accordingly; but in the case of a child domiciled outside the state it is impossible to construe the word "resident" as synonymous with the word "domicile," because such a child has no domicile in any county of Minnesota. Therefore, where a temporary guardian is to be appointed over a child domiciled outside the state, the county where the child actually lives is the appropriate county in which to commence the guardianship proceeding, and the word "resident" in § 525.54 must be construed accordingly. The net result of this construction is that the word "resident" is given a chameleonic appearance, but such a construction is the only one which will give effect to the established rules governing the appointment of guardians.

■ Holding as we do that the domicile of the Kowalke children is determinative of the appropriate court for granting guardianship over them, we have no difficulty in deciding that the probate court of Lyon county was the appropriate court to appoint the guardian. It is well settled that when children are abandoned by both parents they retain the domicile of their father at the time of abandonment. In re Vance, 92 Cal. 195, 28 P. 229; Restatement, Conflict of Laws, § 33(b); Goodrich, Conflict of Laws (3 ed.) § 38. In the present case, it is a matter of record that the Kowalke children were found neglected and abandoned in Lyon county, where their father was then domiciled. There is accordingly no merit in appellants' contention that the guardianship proceeding in this case should have been in Martin county rather than in Lyon county.

■ In discussing this case thus far, we have spoken of the residence requirement in § 525.54 as an abstract matter, without stating whether it is a jurisdictional requirement or a requirement relating

to venue. Counsel in their briefs and in oral argument have discussed this question at some length, and it is apparent that there is no uniform understanding on the matter. It must be recognized, of course, that, since the courts of this state have no jurisdiction beyond our state lines, the requirements of § 525.54 that a minor be resident in a county of this state before a guardian can be appointed over him is to that extent a jurisdictional requirement; but where, as here, the guardianship proceeding pertains to children domiciled in the state, it appears to us that the question of which county is the appropriate place to commence guardianship proceedings is purely a question of venue. Although this question has not arisen in connection with guardianship proceedings, it has arisen in connection with residence requirements in the probating of estates. In In re Estate of Davidson, 168 Minn. 147, 149, 210 N. W. 40, 41, where it is strongly suggested in dicta that the requirement that wills be proved and administration had in the county of the decedent's residence is purely a matter of venue, the court said:

"* * * The statute, sec. 8695, G. S. 1923, provides that, in case of residents of the state, wills shall be proved and administration had in the county of residence at the time of death. That statute does not grant and cannot restrict jurisdiction. It is only a regulation of its exercise. The grant is in the Constitution. Culver v. Hardenbergh, 37 Minn. 225 (234), 33 N. W. 792. By sec. 7, art. 6, 'a probate court shall have jurisdiction over the estates of deceased persons *and persons under guardianship.*' That jurisdiction is general. When it is invoked, it is for the court to determine whether it exists with respect to a particular estate. The 'main fact' upon which it depends is 'the actual death of an individual who, at the time of his death, was *an inhabitant of the state.* That is the jurisdictional fact, upon the existence of which is founded the duty of the state to protect and distribute the property according to law.' The precise location of residence within the state is incidental and determines only the county in which administration shall proceed. * * * So it would seem, particularly where as here probate juris-

diction is given generally to our probate courts, that the question of the county in which it shall be exercised is reduced from a problem of jurisdiction to one of venue only." (Italics supplied.)

This dictum seems equally applicable to the matter of residence in guardianship cases, for, as the court stated, the jurisdiction of the probate court is general both as to estates of deceased persons and as to persons under guardianship. In the case of guardianship proceedings relating to minors, the main facts upon which jurisdiction depends is the existence of a child in need of a guardian who is at the time a resident of the state. This dictum was approved in the later case of In re Estate of Martin, 188 Minn. 408, 409, 247 N. W. 515, 516, where the court held that the requirement of residence is a matter of venue. In that respect the court stated:

"* * * It matters not whether they are to be considered, like the district court * * * as one court for the whole state or separate courts for each county. The fact remains that their jurisdiction * * * cannot be restricted by the legislature. * * * we hold the question to be one of venue rather than of jurisdiction."

When the probate code revision committee amended the Minnesota probate code in 1935, they took note of the Davidson case and the Martin case and of the inaccuracy involved in using the word "jurisdiction" when referring to the proper county for commencing probate proceedings.[10] Relying upon the Martin case, which held that the appropriateness of commencing probate proceedings in a given county is a question of venue, the revisors amended Mason St. 1927, §§ 8927-1 and 8927-2, so as to change the word "jurisdiction" therein to read "venue."[11] These two sections are now found in M. S. A. 525.57 under the title "Transfer of Venue." By the same amending law,[12] Mason St. 1927, §§ 8694 and 8695, were

[10]Pearson, *Guardianships and Commitments Under the Probate Code,* 20 Minn. L. Rev. 333, 339.

[11]See, footnote 10, *supra,* and L. 1935, c. 72, § 136.

[12]L. 1935, c. 72, § 187.

incorporated into the present M. S. A. 525.82 under the title "Venue." In § 525.82, after providing that proceedings for the appointment of a guardian shall be had in the county of the ward's residence, the section further provides:

"If proceedings are instituted in more than one county, they shall be stayed except in the county where first legally commenced until final determination of *venue."* (Italics supplied.)

This section subsumes that a probate court in a given county has jurisdiction over probate matters notwithstanding the fact that it may ultimately determine that the residence of a minor is in another county and hence that the venue is improper. That the appropriateness of proceeding in a given county is a question of venue rather than of jurisdiction is made clear by our decision in State ex rel. Regan v. Probate Court, 215 Minn. 322, 9 N. W. (2d) 765. In that case, there was a dispute as to whether a decedent had been a resident of Olmsted county or of Ramsey county. In a *per curiam* opinion this court stated (215 Minn. 324, 9 N. W. [2d] 766):

"* * * It is apparent from an examination of the petition, returns, and supporting affidavits that decedent was a resident of Minnesota. Whether he was a resident of Ramsey county or of Olmsted county is a fact in dispute. In any event, the first petition for probate was filed in Ramsey county. That court accepted jurisdiction and has jurisdiction to entertain the question whether decedent was a resident of Ramsey or some other county."

■ Since we have determined that a question of venue rather than of jurisdiction is presented by appellants' claim that the probate court of Lyon county improperly entertained respondent's petition for guardianship, our decision here can rest not only upon the ground that Lyon county was the proper venue, but also upon the ground that appellants waived their objection to the venue by failing to raise this objection in the probate court.[13] Appellants

---

[13]Where, as in the case at bar, venue does not go to the jurisdiction of the court over the subject matter, a party may waive his right to a trial

cannot be allowed to save their objection to the venue awaiting the probate court's decision on their own petition, and then, after suffering an adverse decision, raise their objection to the venue for the first time on appeal to the district court. Appellants have also waived objection to the venue in Lyon county because they sought affirmative relief there by petitioning the probate court to appoint Mr. Heen as guardian of the Kowalke children.[14]

Appellants have assigned as error finding No. 7 of the district court that it is expedient and necessary that a guardian be appointed of the persons of the two Kowalke children. They have further assigned as error finding No. 8 that respondent, the Lutheran Welfare Society, is suitable and competent to act as guardian of these children. Both findings are attacked as not justified by the evidence. There is no merit in either of these assignments of error.

Appellants themselves in their cross-petition to have Mr. Heen appointed guardian alleged that it is expedient and necessary that a guardian be appointed for these children. The juvenile court, upon undisputed evidence, found that these children—

"were wilfully neglected, left home unsupervised without sufficient food or clothing. Their home was in an unhabitable condition, the mother is often absent from home and their father is frequently drunk."

The undisputed facts and appellants' own admission in their pleading amply justified the district court's finding No. 7.

With reference to finding No. 8 that respondent is suitable and competent to act as guardian of these children, we think that the record of that organization's accomplishments speaks for itself. That organization arranged to give these children medical and dental care. It has sent them to school and has found an excellent home for them with Mr. and Mrs. Ask. The society is organized for

---

in a particular county. 6 Dunnell, Dig. & Supp. § 10116; 56 Am. Jur., Venue, §§ 36, 37; 67 C. J., Venue, §§ 212 to 214.

[14]Wade v. National Bank of Commerce, 144 Minn. 187, 174 N. W. 889; 67 C. J., Venue, § 216(3).

the purpose of aiding minor children. It is licensed by the state of Minnesota to place children in adoptive homes and acts as an agent of the county welfare boards in the state in caring for neglected and abandoned children. It is frivolous to contend that the evidence does not support the finding that this society is a suitable and competent guardian.

Affirmed.

### On Petition for Rehearing.

On February 9, 1951, the following opinion was filed:

Loring, Chief Justice.

Appellants have petitioned for a rehearing on several grounds, one of which is that this court has not sufficiently considered the law involved in our determination that the Kowalke children were domiciled in Lyon county at the time the Lyon county probate court appointed respondent as their guardian.

It is stated in our opinion that it is a matter of record that these children were found neglected *and abandoned* in Lyon county, where their father was then domiciled. It is further stated that, in accordance with well-settled law, children abandoned by both parents retain the domicile of their father at the time of abandonment. Appellents do not contend that the above rule is erroneous, but rather that it is inapplicable because the Kowalke children were not abandoned. In this respect, appellants correctly point out that the juvenile court of Lyon county found that these children were wilfully neglected *while in the control and custody of their parents.* It thus appears that these children, when found neglected, at least were not abandoned to the extent that their parents could have been prosecuted under our statute, which makes abandonment of a minor a felony. M. S. A. 617.55; State v. Clark, 148 Minn. 389, 182 N. W. 452.

However, it appears that these children were so sorely neglected that any difference between the manner in which they were neglected and a total abandonment was one of slight degree. Further, it is admitted in appellants' pleadings that shortly after the juvenile

court of Lyon county ordered these children to be taken from the custody of their parents both parents left Lyon county without any intention of returning.[15] Finally, it appears that concern for the welfare of these children has proceeded belatedly and, in the main, from relatives other than their parents. Notwithstanding these facts, it is unnecessary for us to decide whether, for any purpose, these children should be deemed abandoned. Our statement that the children were abandoned, even if incorrect, does not affect the result of our decision.

An abandoned child and a child whose home is an unfit place for him by reason of his parents' improvidence or neglect are treated alike under our social welfare statutes. A child in either of the above circumstances is termed a "neglected child" under the provisions of § 260.01, and similar provisions are made for his welfare. We see no reason for differentiating between neglected children and abandoned children so far as their domicile is concerned. Every reason which lies behind the rule that an abandoned child retains the domicile of the last parent who abandoned him at the time of abandonment applies with equal force to support a similar rule with reference to a neglected child. A parent who abandons a child forfeits his right of control over the child voluntarily, while a parent who neglects a child may forfeit that right by order of court, but the result in each case is the same. In both cases the parent's right of control is lost, either temporarily or permanently, and

[15]Although a father who has been judicially deprived of the custody of his child in an action for divorce or separate maintenance can still be prosecuted for abandonment under the provisions of § 617.55, it is the opinion of the attorney general of Minnesota that a prosecution will not lie against a father after custody has been taken away by a court in a different kind of action. See, Report Attorney General, 1938, No. 185; Opinions Attorney General, No. 133-B-1, September 25, 1945. Aside from these opinions, a sufficient showing of abandonment might be predicated upon the pleadings referred to.

during that period the parent has no power to change the child's domicile.[16]

Since the domicile of these children was admittedly in Lyon county at the time the juvenile court of Lyon county adjudged them neglected; since, by the same proceeding, the children were removed from the custody of their parents; and since the children themselves could not change their domicile,[17] it necessarily remained in Lyon county. Although it appears from the findings and order in the neglect proceeding and from the order dismissing that proceeding that the juvenile court, pursuant to M. S. A. 260.11, placed these children in the temporary care or custody of the Lyon County Welfare Board pending a final order in the neglect proceeding, we do not think that the temporary custody given the county welfare board empowered it to change the children's domicile.[18] This being the case, the children's domicile, at all times pertinent, was in Lyon county, and proceedings to appoint a guard-

---

[16]It is well established that a parent who abandons a child forfeits all right to change the child's domicile. In re Vance, 92 Cal. 195, 28 P. 229; People v. Dewey, 23 Misc. 267, 50 N. Y. S. 1013; In re Rogers, 11 Ohio Dec. 806; Elliott v. Elliott, 181 Ga. 545, 182 S. E. 845; Ferguson's Adm'r v. Ferguson's Adm'r, 255 Ky. 230, 73 S. W. (2d) 31; see, Fox v. Hicks, 81 Minn. 197, 208, 83 N. W. 538, 540, 50 L. R. A. 633; Restatement, Conflict of Laws, § 33(1)(b); Goodrich, Conflict of Laws (3 ed.) § 38(1). No case has been found which squarely holds that a parent loses the right to change a child's domicile after a court has removed the child from the parent's custody and delivered it into the temporary custody of a county welfare board. However, that result follows by analogy from divorce cases wherein it has been held that the parent losing custody of a child also loses the right to control the child's domicile. Fox v. Hicks, 81 Minn. 197, 83 N. W. 538, 50 L. R. A. 633 (by implication); State ex rel. Larson v. Larson, 190 Minn. 489, 252 N. W. 329.

[17]State ex rel. Larson v. Larson, 190 Minn. 489, 252 N. W. 329; Fox v. Hicks, 81 Minn. 197, 83 N. W. 538, 50 L. R. A. 663 (by implication); State ex rel. Carlson v. Hedberg, 192 Minn. 193, 256 N. W. 91.

[18]There is considerable support for this view in State ex rel. Carlson v. Hedberg, 192 Minn. 193, 256 N. W. 91, where the court cited with approval the rule of the Restatement that, when a father dies, the child retains its

ian over them were properly commenced in that county. Appellants' petition for rehearing is accordingly without merit and must be denied.

Having reaffirmed our holding that the venue of this action was correct, it is unnecessary to rediscuss our alternative holding that appellants, in any event, waived objection to the venue. It is sufficient here to state that we have considered appellants' objections to our alternative holding and have determined that no meritorious objection has been presented by their petition.

One additional matter in appellants' petition requires comment. Throughout this action appellants have contended that the district court should have granted them judgment on the pleadings. This contention is based upon appellants' claim that it was alleged and admitted in the pleadings that the Kowalke children were *residing* in Martin county at the time their guardian was appointed in Lyon county. Appellants, therefore, contend that no issue as to residence was raised and that the district court was not entitled to determine that the children were resident in Lyon county.[19] This contention entirely misconceives the role of the pleadings in a legal action. It is elementary that the function of the pleading is to set forth the issuable facts, not conclusions of law.[20] Since the principal question of law in this case relates to the legal meaning of the word "resident," as used in M. S. A. 525.54, there is no merit in appellants' contention that the legal residence of these children

father's domicile during minority unless it is changed by the child's mother or its legal or natural guardian. See, Restatement, Conflict of Laws, § 36. Thus, if a child is taken from the custody of its parents and is not given into the custody of a legal or natural guardian, no one has the power to change the child's domicile. Temporary custody is not enough.

[19] Appellants base this contention upon In re Estate of Stevens, 224 Minn. 102, 27 N. W. (2d) 872, wherein it was held that no issue not raised by the pleadings can be litigated in the district court over objection.

[20] M. S. A. 544.02; 1 Pirsig's Dunnell, Minn. Pl. (3 ed.) §§ 37, 38.

312

was an ultimate fact to be determined from an alleged admission in the pleadings.[21]

Petition denied.

---

[21]A conclusion of law raises no issue on being denied by the adverse party and is not admitted by failure to deny it when pleaded. See, 2 Pirsig's Dunnell, Minn. Pl. (3 ed.) § 1177, and numerous cases cited therein; 1 *Id.* § 57.